THEOPHILUS H. CHESTNUT and MARY T. CHEST-
NUT, Respondents, v. SECURITY MUTUAL LIFE
INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, May 23, 1921.

1. **INSURANCE: Policy: Construction: Express Words in Policy Fix-
ing Date of Payment do not Control in the Face of a Modifyng
Clause.** Where an insurance policy provided for quarterly pay-
ments on the 8th day of December, March, June, and September,
*held*, not controlling as to the dates of payment where the policy
also contained a provision stating that the policy shall not be bind-
ing until delivered "during the good health of the insured and until
the first advance premium had been paid."

2. ———: **Contracts:. Mutuality: Payment of First Advance Premium
and Delivery of Policy Should be Simultaneous, and Such Acts Fix
the Dates of Future Payments.** Where the contention of the
insurance company is that although the policy did not go into
effect until some time later, that the due dates remained un·
disturbed *held* fallacious as such a contract would not be mutual,
that the evident intention was that the payment of the first pre-
mium and delivery of the policy should be simultaneous and such
acts were to fix the dates of the future premiums.

3. ———: ———: **Construction: Forfeiture: Contracts Open to Con-
struction will be Construed so as to Sustain not Forfeit.** If con-
tracts of insurance are so framed as to be fairly open to construc-
tion, that view should be adopted, if possible, which will sustain,
not forfeit.

4. ———: **Forfeiture: Tender of Premium Timely.** Where an in-
surance premium under the express terms of the policy was to
be paid on the 8th day of the month, but the policy under a
modifying clause had not gone into effect until the 20th day of
the month, the later date fixed the time of payment, and a tender
of payment on the 14th was timely, and the defendant was with-
out warrant of law in declaring the policy forfeited.

Appeal from the Circuit Court of Carroll County.—*Hon.
Ralph Hughes,* Judge.

AFFIRMED.

*Conkling & Withers* and *Wm. G. Busby* for respondent.

*H. D. Hinman* and *Lozier & Morris* for appellant.

ARNOLD, J.--This is a suit to recover premiums paid on a life insurance policy on account of alleged wrongful cancellation of the policy and forfeiture of premiums by defendant.

On December 2, 1891, plaintiff Theophilus H. Chestnut, made written application for a policy of insurance to the defendant company (then the Security Mutual Life Association but since changed to the Security Mutual Life Insurance Company), in which application and policy issued Mary T. Chestnut, wife of Theoph, H., was (later) the sole beneficiary. The said application was referred to the home office of the company at Binghampton, N. Y.; was approved and the policy involved in this suit issued as of date December 8, 1891, and numbered 4859, in the amount of $2,000. The said policy provided an advance premium of $14.14 should be paid on or before the 8th day of December, March, June and September, during the continuance of the policy. The application and policy further provided that if the premiums were not paid on the dates designated in the policy, the company's liability thereon would immediately terminate, and all premiums theretofore paid would become forfeited to defendant.

Defendant urges that the express words in the March 8, 1914, had been paid. On June 8, 1914, a premium of $14.14 was due as stipulated in the policy but was not paid on, or prior to, that date.

Thirty days before each premium became due under the terms of the policy, defendant mailed to plaintiff a notice informing him when the next premium would become due and that if the same were not paid when due,

the policy would become forfeited. On May 8, 1914, defendant mailed such a notice to the insured advising him that the next premium would be due June 8, following. On June 12, 1914, plaintiff sent defendant a draft for the amount of the premium with a letter explaining the delay. Defendant, on receipt of the said letter and draft on June 15, wrote plaintiff returning the draft to him with a blank application for re-instatement.

On June 18, 1914, plaintiff forwarded to defendant a health certificate signed by a physician, and enclosed a draft for $14.14 but no application for reinstatement was enclosed nor afterwards sent. On receipt of this letter defendant again wrote plaintiff reminding him that he had failed to forward a signed application for reinstatement and enclosing another blank therefor which defendant asked insured to complete and return, and stated that when received the whole matter would receive due consideration and that defendant would retain the draft pending return of the application for reinstatement. Failing to hear from the insured defendant wrote him returning the draft and stating that the policy had lapsed in accordance with its terms and provisions.

This suit was instituted August 24, 1914, to recover all of the premium payments theretofore made.

In their second amended petition plaintiffs allege two reasons for failure to pay, on June 8, 1914, the premium due as per the terms of the policy, viz., (1) that defendant, on various occasions, had accepted premiums which were past due under the express terms of the policy and thereby had established a custom, prior to June 8, 1914, of receiving payments of such premiums after such expressed dates; that assured had knowledge of said custom thus established, relied thereon, and for that reason did not pay on June 8, 1914, the premium due on that day as per the terms of the policy; and (2) that while the policy is dated December 8, 1891, and by the terms thereof the premiums were to be paid on the 8th days of December, March, June and September of each

year, yet the policy by its terms provides that the same should not be binding until delivered during the good health of the insured and until the first advance premiums should be paid. That after signing his application on December 4, 1891; and before the delivery of the policy, the insured became sick of pneumonia and so remained until about January 1, 1892, and because of such illness said policy was not, and could not be, delivered to him ''during his good health'' and that in fact the policy was not delivered until about January 1, 1892, and that by reason of such facts the policy did not become effective until about January 1, 1892, and that the subsequent advance premiums did not become due until on or about the first day of January, April, July and October, and that, therefore, the premium mailed on June 12, and received at the home office of defendant company on June 15, 1914, was timely.

The answer admits the execution of the policy and generally denies all other allegations and specially pleads the terms of the policy providing for the lapse of the policy and forfeiture of premiums, and that plaintiff, by his course of dealing after the delivery of the policy, had construed and interpreted the same to mean and require that the premiums were due and payable on the 8th days of December, March, June and September, and that by reason of the failure of the insured to pay the premium due, as per the terms of the policy on June 8, 1914, said policy became null and void, and the paid premiums forfeited, and that plaintiffs were estopped from denying the same.

The cause was tried to the court, a jury having been waived. The result was a judgment for plaintiffs on findings of law and fact, in the sum of $2570.60, and defendant appeals.

There is no dispute as to the facts of the case, and the contention is based upon the application of the law to the facts. In its finding of facts the court declared:

(1)   That defendant by its policy No. 4859, in consideration of an advance premium of $14.14 and the further advance quarterly premium of $14.14 to be paid by Theo. H. Chestnut, on or before the expiration of each quarterly period of three months in every year thereafter during the continuance of the policy, did insure the life of plaintiff Theoph. H. Chestnut in the sum of $2000, and that Mary T. Chestnut wife and co-plaintiff of said Theoph. H. Chestnut, herein, is now the sole beneficiary in said policy.

(2)   That no custom or course of dealing had been established between plaintiff and defendant prior to June 8, 1914, whereby defendant waived the prompt payment of the quarterly premiums as they became due under the terms and provisions of the policy, but that it was and is provided by the policy that the same should not become binding until delivered during the lifetime and good health of the insured and payment of the first premium thereon; that after signing the application on or about December 4, 1891, and prior to the delivery of the policy and payment of the first premium thereon, insured was sick until on or after December 20, 1891; that by reason of such sickness the policy could not be delivered nor the first premium paid thereon during his good health until after his recovery from such sickness on or after December 20, 1891; that said policy was not in fact delivered to insured nor was the first premium paid thereon until on or after December 20, 1891; that by reason of such facts the policy became a binding contract upon its delivery and the payment of the first premium thereon on or after December 20, 1891, for a full quarter period of three months from such effective date, and the subsequent quarterly premiums thereon became payable on or before the expiration of each quarterly period of three months in every year thereafter during the continuance of the policy; that each and all of the premiums on said policy, excepting the premium due on or before June 20, 1914, were duly paid and

accepted by defendant; and that the last-mentioned premium was duly and timely tendered by the insured to defendant on June 15, 1914, and refused by defendant, and the said policy thereupon cancelled by defendant.

Upon this finding of facts, the court declared the law to be:

"The court concludes as a matter of law from the facts found that the refusal of the defendant to accept the premium tendered to it by the plaintiff, Theophilus H. Chestnut, on June 15, 1914, and its cancellation of the policy, as aforesaid, was wrongful and unlawful and that the finding and judgment should be for the plaintiffs in a sum equal to the aggregate amount of the premiums paid on the policy in suit together with interest on each of said payments from the date thereof at the rate of six per cent per annum."

Defendant duly filed its motions for a new trial and in arrest of judgment which were by the court overruled and a formal order granting appeal to this court made.

The basis of defendant's contention is that the trial court erred in finding and adjudging that the due dates of the premiums fixed by the policy were affected by the date of delivery and taking effect of the policy. In the first paragraph of the policy under consideration is the following: "In consideration of the application for this policy, which is made a part hereof, and of the advance payment of $14.14 to be made on or before the 8th day of December, March, June and September in every year during the continuance of this contract," etc. The application referred to in the first clause of the policy as being made a part of the contract is, in part, as follows: "11A—Are payments to be made annually, semi-annually or quarterly? —Quarterly." The two clauses above referred to conjointly define the covenants relative to the time of premium payments in dispute herein.

The agent of defendant at Carrollton, Mo., at all times herein mentioned, was one R. E. Buchanan, and part of his duties was the collection of premiums. The

testimony tends to show that it was Buchanan's custom to remit to the home office of the company the last of the month the premiums received up to the date of remittance and it was his common practice to accept premiums from Chestnut and other policy-holders after he due dates mentioned in the policies.

Mr. Chestnut testified that he had paid eight to ten premiums on the policy after the due dates mentioned therein, and that he signed the health certificate upon the payment of several of these premiums; but that he declined to sign the health certificate mailed to him by defendant in its letters of June 15 and 20, 1914, because of a clause inserted therein giving defendant the right to raise his premium rates.

Plaintiffs contend that these repeated acts of defendant in accepting past due payments of premiums constituted a waiver of defendant's right to claim a forfeiture. The court below held to the contrary and doubtless did so because in the notices sent to the insured the following clause was included therein: ''The acceptance of any premium by the company after the date when due  .  .  .  shall not be construed as a waiver of the conditions of the policy as to future payments, nor as establishing a course of dealing between the company and the holder of the policy.'' As will hereafter appear we do not find it necessary to pass upon the point in question.

Defendant urges that the express words in the policy fixing the dates for payment of quarterly premiums must control, and that the ruling of the court to the contrary is a substitution therefor of a contract based upon the interpretation of the court and is error.

In determining this question it will be necessary to ascertain what really was the contract entered into between the parties thereto. First it appears the application directs that the premiums be paid quarterly, and second, the policy directs that said quarterly premiums shall be due and payable on the 8th days of December,

March, June and September of each year during the life of the policy. This latter stipulation, however, is modified by the provision in the policy which states that the same shall not be binding until delivered "during the good health of the insured and until the first advance premium is paid."

It will not be seriously contended, we take it, that this last provision is not as much a part of the contract as the one preceding, which fixes the dates of the quarterly payments of premiums. There is nothing ambiguous about it. The modifying clause was included in the contract, obviously to meet just such an emergency as the one presented in this case, to wit, that the policy could be delivered only during the "good health" of the insured, and defendant's numerous citations on this point do not apply. Clearly then the modifying clause controls, and the mutual obligations began only after the policy was delivered on recovery of the insured from his illness. To hold otherwise would place the insured in the position of paying for practically one month's insurance that he did not receive.

In this connection defendant contends that the due dates for the payment of premiums are undisturbed because the policy was not in effect for some days later than the date the first premium was paid, and that the advance payment, although made one month prior to the date the policy became effective merely entitled insured to one quarttr's insurance from the date the policy became effective, regardless of the due date of the first premium.

We fail to see the mutuality of such a contract. It is not possible under a contract containing mutual covenants, to hold one of the parties to the strict terms thereof and not the other. It could not have been intended that the first premium should be due and payable on December 8, 1891, while the policy could not, and did not, become effective until nearly a month afterwards. We hold that the clear meaning and intent of the con-

tract was that the payment of the first advance premium and the delivery of the policy were to be simultaneous, and that such acts were to fix the dates of payments of further premiums; that one quarter's premium in advance purchased three months' insurance.

We recognize McMasters v. Ins. Co., 183 U. S. 25, opinion by Chief Justice FULLER, as directly in point, at least in its conclusions, and accept it as the law in holding as above indicated. Defendant contends that the conclusions in the McMasters case do not apply to the facts in the case at bar because in that case the suit was for the face of the policy, while in the present case the action is for the return of premiums paid, with interest. We do not accept this reasoning as sound.

The contention between the parties hereto shows that the rule with respect to forfeiture is open to construction. The McMasters case holds, in effect, that the rule in respect to forfeiture that if policies of insurance are so framed as to be fairly open to construction that view should be adopted, if possible, which will sustain, rather than forfeit, the contract, is applicable. Tested by this rule, the policy in the case at bar was not in force earlier than December 20, 1891, and as the quarterly premium had been paid up to June 20, 1914, forfeiture could not rightfully be insisted upon when a tender of the premium was made on June 15, 1914.

We do not deem it profitable to analyze and differentiate between all the numerous cases cited by the very able counsel on both sides of this controversy, and we shall not do so. We hold Halsey v. Ins. Co., 258 Mo. 659, to be the ruling case in this State, and that case is directly in point with the case at bar so far as the principle of forfeiture is discussed. In the Halsey case the application was made May 24, the policy dated May 31, and the policy delivered and the first annual premium paid June 5, 1906. The second annual premium was tendered May 31, 1907. The policy in that case provided as here that the same would not become effective until delivered and

the first annual premium paid; held by the court that the policy was in force until the last minute of June 4, 1907. The company contested on the grounds that the policy had lapsed for nonpayment of the premium on May 24, 1907. WOODSON, P. J., in his opinion, remarked:

"This nor any other court should allow an insurance company to thus stultify itself after taking the premium for a full year, and then escape liability by interposing the technical question that by the application for the policy the insured agreed to pay the premium long before it was due. That contention of counsel for appellant is not in harmony with the rulings of the best considered cases disposed of by the courts of last resort in this country and in England."

Under this decision and the cases therein cited we hold that in the case at bar the policy of the insured was in force until on or after June 20, 1914, and that the tender of the quarterly premium on June 15, 1914, was timely and defendant was without warrant of law in declaring the policy forfeited.

Entertaining these views we are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.