HERMAN JOSEPHINE McQUEENY, Appellant, v. NATIONAL FIDELITY LIFE INSURANCE COMPANY, a Corporation.—No. 37210.—166 S. W. (2d) 461.

Court en Banc, November 12, 1942.

Rehearing Denied, December 7, 1942.

470

*Edw. E. Naber, Carl E. Kimpton* and *Walter A. Raymond* for appellant.

472

*Morrison, Nugent, Berger, Byers & Johns, E. R. Morrison* and *W. B. Cozad* for respondent.

DALTON, C.—This is an action upon an insurance contract. Defendant alleged the policy had lapsed for non-payment of premiums, and that the extended insurance thereafter provided had terminated prior to the date of insured's death. The cause was tried to the court, without aid of a jury, and judgment was entered for defendant. Plaintiff has appealed. We have jurisdiction because the amount sued for exceeds $7500.

The policy, dated June 27, 1923, is designated a "Non-participating Whole Life (Policy) Endowment at Age 85, Premiums payable until age 85," and insured the life of James McQueeny for $5000. Appellant was named as beneficiary. The insured died August 24, 1933, and this suit was instituted February 19, 1938. The facts are not in dispute and each party contends it is entitled to judgment upon the conceded facts. Nine and one-quarter annual premiums were paid on the policy and it then lapsed for non-payment of premiums.

Respondent claims the policy lapsed September 27, 1932. Respondent admits that the policy then had a cash surrender value of $1003, but claims that, after deducting a net indebtedness of $898.83 (evidenced by a note for $941.18, dated August 1, 1932, from which unearned interest to June 27, 1933, was deducted), the policy actually had a net value of only $104.17 available for term insurance. This amount was not sufficient to carry the policy as term insurance to the date of insured's death. It is conceded that a net value of $108.73 would have been required to keep the policy in force as term insurance from September 27, 1932 to and including August 24, 1933, a total of 331 days.

Appellant first contends that, assuming the date of lapse and the indebtedness mentioned are correct, the policy actually had a net value of $192.72.

The policy provided for the payment of an annual level rate premium of $187.60 "during its continuance." The reserve basis was stated to be "the American Experience Table of Mortality with interest at the rate of three and one-half per cent per annum, modified term plan." The consideration clause mentioned "the payment in advance of the Annual Premium of One Hundred Eighty Seven and 60/100 Dollars, comprising the legal reserve and the premium for term insurance for the first policy year"; and required "the further payment of a like amount on the Twenty Seventh day of June in every year thereafter during" the continuance of the contract. A table

of guarantee values was set out, showing (1) cash surrender or loan value, (2) paid-up insurance, and (3) paid-up non-participating term insurance for specified terms, depending upon the number of the years the policy was in force. The table fixed $970 as the cash surrender or loan value of the policy after nine years' premiums had been paid and $1100 after ten years' premiums had been paid. The policy stated: "The guaranteed values . . . are equal to the entire reserve on this policy, ▮▮▮▮ less an amount not greater than two and one-half per cent of the amount insured by this policy. Due allowance will be made for payment of fractional premiums beyond completed policy years."

Provision was made for automatic extended insurance and the term of such insurance said to "be such as the cash value of this policy, less any indebtedness hereon to the company, will purchase as a single net premium on the basis of the American Experience Table of Mortality with interest at the rate of three and one-half per cent per annum."

On the basis of the table of guaranteed values, the parties agree that, after $9\frac{1}{4}$ years premiums had been paid, the cash surrender or loan value according to the table would be $1003. This sum was in excess of the amount required by Sec. 5852, R. S. 1939, Mo. St. Ann., Sec. 5741, p. 4388 (interest at four per cent per annum with 25% surrender charge). It is conceded that the cash value of the policy at the assumed date of lapse, figured according to the statute on the face amount of the policy as issued at age 49 and carried for $9\frac{1}{4}$ years on a "net level basis," would be $777.23.

Appellant's actuary testified that assuming the policy was issued June 27, 1923, for $5000 to the insured at age 49 years, premium $187.60 annually, and the premiums were paid for $9\frac{1}{4}$ years to September 27, 1932, that, calculating the reserve upon the American Experience Table of Mortality at $3\frac{1}{2}$ per cent interest per annum upon the basis provided in the policy (modified preliminary term basis), the reserve on September 27, 1932 was $1004.75, only $1.75 more than the cash surrender or loan value stated in the policy tables. The witness said "the table of values indicates that calculation was made by the company upon the basis of the first year being one year's term insurance" but that, calculating the reserve on the same facts used in his prior calculation, except using the "net level premium basis" with reserve on the first year, the reserve on the policy on September 27, 1932 was $1093.30.

Appellant contends that, since the policy was a level premium policy, a legal reserve on the first year's premium should be considered and, in fact, was agreed to in the consideration clause which referred to the annual premium of $187.60 as "comprising the legal reserve and the premium for term insurance for the first policy year." In further support of this theory appellant on cross-examination of re-

spondent's actuary showed that the required premium to carry term insurance for one year at age 49 was $12.66 per thousand or $63.60 for $5000; that this amount deducted from the premium of $187.60, left a remainder of $124.30; that the legal reserve for the first year was $22.17 per thousand or $110.85 for $5000 insurance, which sum of $110.85 deducted from $124.30 left a balance of $13.45 for general expenses.

Appellant says that the evidence in the record, including respondent's witness' statement that "this $1.75 represents merely the difference between the reserve, which in my opinion is a correct reserve on this policy, and the cash value actually stated in the table of values," established that the surrender charge actually taken by respondent from the reserve on the policy at date of lapse was only $1.75. Appellant further says "under the provisions of the policy, the defendant might have taken a maximum surrender charge not to exceed 2½ per cent of the amount of insurance, but it did not elect to do so, and in fact at the time of the lapse, took a surrender charge of only $1.75 from the amount of the reserve." Appellant argues that, since respondent made a surrender charge of $1.75, only this amount may be deducted from the reserve value of the policy as appellant contends it should have been figured upon the net level premium basis.

Appellant then contends that, if $1.75, which it claims the policy on its face shows was the surrender charge deducted by respondent, was deducted from the true and correct reserve value as indicated in the consideration clause of the policy (reserve on the first year), the cash value on September 27, 1932 was $1091.55; that deducting from this sum the net indebtedness of "$898.83, as claimed by defendant and found by the court," the net equity of the insured in the policy was $192.72; and that this sum was more than sufficient to keep the face of the policy in force as term insurance to a date subsequent to insured's death.

Respondent, in reply, contends that, assuming the policy was a level rate policy and that insured was entitled to a reserve out of the first year's premium, as indicated by the consideration clause, and, assuming that the true and correct reserve value of the policy at the end of 9¼ years is $1093.30, then in that event, since the policy table shows a cash surrender or loan value of $1003.00, the policy shows respondent deducted or made a surrender charge of $90.30. The respondent points out that the policy provided the guaranteed values were "equal to the entire reserve value on the policy less an amount not greater than two and one-half per cent of the amount insured by this policy," and that this permitted a surrender charge of $125.00 on this $5000 policy. Respondent says that in either case the value set up in the tables exceeded the requirements

of the statute, supra, and the surrender charge was less than the 2½ per cent permitted by the policy.

We think it is apparent that to arrive at a net cash surrender value of $192.72, sufficient to keep the policy in force to the date of insured's death, appellant uses two squarely conflicting legal interpretations of the terms of the policy. Appellant first takes the interpretation which respondent's witness thinks is legally correct (but which appellant says is wrong) and determines the reserve value of the policy as $1004.75 (this legal interpretation of the policy terms omits any reserve on the first year). From this sum ($1004.75) appellant deducts the cash surrender value set up in the policy tables (agreed to be $1003.00, but which figure appellant contends is not binding on insured) and so appellant arrives at the so-called $1.75 surrender charge. Appellant then figures the legal reserve value of the policy according to what she contends is the correct legal interpretation of the policy terms (therefore includes a reserve value for the first year) and determines the reserve value on date of lapse as $1093.30. From this sum ($1093.30) appellant deducts the $1.75 so-called surrender charge and gets a cash surrender value of $1091.55 (which she contends controls over the figure stated in the table of values) and deducting the indebtedness she arrives at a net surrender value of $192.72. But if appellant's interpretation of the legal effect of the terms of the policy for determination of reserve value is correct and respondent's legal interpretation is wrong, then the $1004.75 figure (from which appellant deducted the $1003.00 figure to get the $1.75 surrender charge) has no legal existence whatsoever. Appellant has merely set up a straw man to arrive at the sum of $1.75 and has continued to use it after she has wiped out the basis upon which it was obtained.

Appellant in support of her theory, (1) that the cash value of the policy must be determined by figuring the reserve on a net level basis and then deducting only a $1.75 surrender charge, and (2) that such value is controlling rather than the table of values, cites Gooch v. Metropolitan Life Insurance Company, 333 Mo. 191, 61 S. W. (2d) 704, 706. In that case the court refers to two provisions of a policy, one in conflict with the statute, supra, and one more liberal than the statute, and holds that, when read with the statute, the statute nullified the provision of the policy in conflict therewith, but left the provision more favorable than the statute. The case is not applicable here. The net value fixed by the policy tables exceeds the minimum required by the statute. There is no conflict with the statute. Any uncertainty or indefiniteness of language with reference to amount of reserve or amount of surrender charge is made definite and certain by the table of values, which show the amount available for term insurance and the term it will provide. Whether the value of the policy on September 27, 1932 is figured with or without

a reserve value for the first year, the policy table of values is more favorable than the statute, and the values stated control. Bramble v. Kansas City Life Insurance Co., 349 Mo. 318, 160 S. W. (2d) 746; Legrand v. Central States Life Insurance Co. (Mo. App.), 132 S. W. (2d) 1105.

Appellant further contends that "defendant's denial of liability in this case is based upon the theory that, when such surrender charge of $1.75 was taken, the net cash value was not sufficient to carry the policy as temporary extended insurance to the time of insured's death," and that, "having denied liability on that ground, it cannot assert that a different surrender charge should or could have been taken by it." Appellant cites Ash-Grove Lime and Portland Cement Company v. Southern Surety Company, 225 Mo. App. 712, 39 S. W. (2d) 434, 441. We think the record shows that respondent denied liability on the theory that the net cash surrender value of the policy, (according to the policy tables) after deduction of indebtedness, was not sufficient to carry the policy as term insurance to the time of insured's death. The amount of the surrender charge actually taken was not discussed nor was it expressly stated in respondent's answer or in the policy. The contention is overruled.

Appellant next contends that, assuming the admitted value of the policy, the indebtedness against it was less than claimed by respondent, and the net balance was sufficient to keep the policy in force as extended term insurance to the date of insured's death. Appellant says the respondent "charged insured interest in advance on the note dated August 1, 1932, for a longer period of time than specified in the note"; and that the "insured was entitled to a credit on the note at the time the policy lapsed for such excessive interest charge in determining the cash value of the policy." The execution of the note by insured, in the sum of $941.18, is not questioned, but appellant says the amount of advance interest charged on the note was excessive and, in effect, that the note should have been for $935.77. Respondent says the note correctly reflected the indebtedness, but concedes that interest in advance on the note from its date to the date of maturity (August 1, 1932 to June 27, 1933) in the sum of $51.06 was included in the principal sum, and paid from the proceeds of the note, and, in view of the repayment of the loan (from the cash value of the policy upon its lapse), that the insured was entitled to and was given credit for ($42.35) the "unearned portion of interest previously paid to date of maturity," as provided by the terms of the note.

It is conceded that the earned interest, at the agreed rate, on the loan from August 1, 1932 to September 27, 1932 (the assumed date of lapse) is $8.82, and that interest on the principal sum ($941.18) from August 1, 1932 to June 27, 1933, at the rate agreed,

was \$51.06. The question in dispute is, what amount of interest *in advance on the note* was included in the \$941.18, and paid from the proceeds thereof? Was the amount excessive? Appellant contends that \$56.49, interest in advance on the note to June 27, 1933, was taken from the proceeds of the note and that this sum was excessive in the sum of \$5.41, since only \$51.06 was required; and that insured was entitled to a credit for said sum of \$5.41 on the note, in addition to the conceded unearned interest credit of \$42.35 given by respondent. If appellant is correct, the total available as a net single premium for the purchase of term insurance on September 27, 1932, was \$109.47 and the amount was sufficient to keep the policy in force as term insurance to September 26, 1933, two days beyond insured's death. Additional facts must be stated.

The quarterly premium of \$49.71 demanded by the appellant as of June 27, 1932 was not paid on that date, nor within 31 days thereafter, but was paid from the proceeds of the policy loan agreement of August 1, 1932. The quarterly premium claimed by respondent to be due September 27, 1932, was never paid, although an extension was granted until November 27, 1932 upon insured's request. The policy provided: ''Cash loans will be granted on the sole security of this policy and proper assignment of the same at any time while the policy is in force, after premiums have been paid in cash for three full years, for any sum not greater than the cash surrender value indicated in Column (1) of the accompanying Table of Guaranteed Values, deducting therefrom all other indebtedness hereon to the Company. Interest shall be paid on such loans at the rate of six per cent per annum, payable in advance to the end of the current policy year, and annually in advance thereafter; if interest is not paid when due it shall be added to the principal and bear interest at the same rate. . . .'' The loan agreement, dated August 1, 1932, stated that, ''in accordance with the provisions and subject to the terms of'' the policy ''said Company has this day loaned and advanced to the party . . . of the second part the sum of Nine Hundred Forty-One and 18/100 Dollars. The party . . . of the second part hereby acknowledges the receipt of such loan and agrees to repay the same . . . as hereinafter provided. Interest on said loan at the rate of 6% per annum shall be payable in advance from the date hereof to the 27th day of June 1933, and annually in advance thereafter . . . Repayment of said loan in whole or in part, as aforesaid, will entitle said party or parties of the second part to a refund of any unearned portion of interest previously paid to date of maturity.''

It will be noticed that the loan agreement on its face does not show that any ''advance interest on the note'' was included in the principal sum shown, but states that, ''Interest on said loan . . . shall be payable in advance from the date hereof to the 27th day

of June, 1933, . . . Repayment of said loan in whole or in part . . . will entitle said party . . . of the second part to a refund of any unearned portion of interest previously paid to date of maturity.''

Respondent deducted from the $941.18 note, the unearned interest, that is, the advance interest from the assumed date of lapse (9-27-'32) to the maturity of the note ▮▮▮ (6-27-'33) in the sum of $42.35, to get a net indebtedness of $898.83. This sum deducted from the cash value of the policy of $1003, as shown by the tables, left a net value available on September 27, 1932 for the purchase of term insurance of only $104.17.

In support of appellant's theory that respondent charged the insured a full year's interest in advance on the note of August 1, 1932 (that is, for a longer period of time than to June 27, 1933, the date specified in the note) the appellant offered in evidence a letter from the respondent to the insured, dated August 1, 1932, as follows: ''Agreeable to your request, we have applied a new Loan of $941.18 on the above numbered policy covering the following items:

| | |
|---|---|
| Interest to 6-27-33 | $ 56.47 |
| Qtr. Prem. due 6-27-32 | 49.71 |
| Present Loan | 835.00 |
| | $941.18 |

We enclose the receipt for the quarterly premium deducted and also your old Loan Agreement which we have cancelled, and a copy of the new Loan Agreement.''

Appellant, in argument, assumes that the word ''interest'' as used in this letter means interest ''in advance on the new note.'' The amount indicated, $56.47, was sufficient to pay one full year's interest at 6% in advance on $941.18 from August 1, 1932 to August 1, 1933, but the interest on $941.18 to June 27, 1933 was only $51.06, and the letter says ''to 6-27-33.'' If appellant is correct as to the meaning of the word ''interest,'' error appears on the face of the letter. Respondent contends, in effect, that the word ''interest'' as used in the letter means ''*all* interest to 6-27-'33,'' and included $5.41 accrued interest on a prior loan to the date of the new loan and only $51.06 ''advance interest'' on the new loan to 6-27-'33; that, since only $8.82 was earned from 8-1-'32, a credit of the difference between $51.06 and $8.82, or $42.24 (also given as $42.35 would be the ''refund of any unearned portion of interest previously paid to date of maturity,'' as provided for in the loan agreement. In support of this theory, and over appellant's objections that the evidence tended to vary the plain and unambiguous terms of the written contract evidenced by the note, respondent was permitted to show the records of the company with reference to said loan and to offer evidence to the effect that the interest on the prior loan of $835.00 had only

been paid to June 27, 1932; that $50.10 advance interest for one year became due thereon on June 27, 1932; and that the old note, the current premium past due on the policy, and interest on the old note to the date of execution of the new note, were paid out of the new note. The witness said that the item of $56.47, interest, could be divided "into past due interest due from June 27, 1932, up to August 1st, the date of the (new) loan, and interest in advance from that time on to June 27, 1933 on the same sum of money"; and that it was immaterial whether the loan was actually made on August 1st or June 27th as the sum of money was the same in any event. The court on request of respondent found that the $941.18 loan contained interest in the amount of $56.47 from June 27, 1932 to June 27, 1933; that "of this amount $5.41 was already earned on August 1, 1932 and $51.06 was paid in advance to cover interest from August 1, 1932 to June 27, 1933"; that the proper credit for unearned interest included in the note was $42.35, "leaving a net indebtedness on the policy of $898.83"; that this sum deducted from the cash value of $1003.00 stated in the policy left the sum of $104.17 which was sufficient to extend the face amount of the policy from September 27, 1932 for 318 days or until August 11, 1933.

Since appellant contends the admission of the evidence referred to as explanatory of the letter was error because it "tended to vary the express terms of the note," it becomes necessary to determine this issue prior to a determination of the question as to whether the note contained $5.41 of excess advanced interest. Did the evidence offered by respondent tend to vary the express terms of the note of August 1, 1932? The note did not show how the proceeds thereof had been distributed or how the amount thereof had been determined. There was nothing on the face of the note to show respondent had "charged insured interest in advance . . . for a longer period of time than specified in the note." The note on its face provided that interest should be payable in advance, but did not show that any advanced interest was included in the principal sum of the note. It did state, that in the event of repayment of the loan, "any unearned portion of interest previously paid to date of maturity" would be refunded. The evidence objected to did not "tend to vary the express terms of the note," but tended to confirm the note and show the sum indicated therein represented the true amount of indebtedness, including interest in advance on the note from August 1, 1932 to June 27, 1933. The evidence was explanatory of the word "interest" as used in the letter. The insured executed the note, the respondent executed the receipt for its proceeds. The reference in the receipt to "interest to 6-27-'33" was ambiguous and open to explanation. The letter failed to state on what items interest was figured. It merely showed that "Interest to 6-27-'33 . . . . $56.47" was paid from the proceeds of

the note, but it did not show that such sum was all interest in advance on the note dated 8-1-'32, nor did it amount to substantial evidence that the amount of the note was excessive or included an overcharge of $5.41 "excess interest in advance on the note." The evidence objected to was properly received.

Appellant says the court's finding on the main issue (of excessive interest charge) is unsupported by the pleadings and evidence. We are of the opinion that the court's finding was fully supported by the evidence and did not conflict with the allegation in respondent's answer that "the principal amount of said loan, to-wit, $941.18 included a sum sufficient to pay the interest *on said loan* to the 27th day of June, 1933." (Italics ours.) The answer did not allege what other items were included in the face of the note. The authorities cited by appellant on "account stated" and on "accord and satisfaction" (Conklin v. Henry Quellmalz Lbr. & Mfg. Company (Mo. App.), 20 S. W. (2d) 564, 566; Caneer v. Kent, 342 Mo. 878, 119 S. W. (2d) 214, 216; McCormick v. Interstate Consolidated Rapid Transit Company, 154 Mo. 191, 201, 55 S. W. 252; and Quilty v. New York Life Ins. Company, 153 Kan. 129, 109 Pac. (2d) 215, 219) seem rather to support respondent's position rather than that of appellant, since apparently, if appellant is correct, respondent required the insured to execute the note for $941.18 to cover all indebtedness as a condition to reinstatement. Apparently, the sum was agreed to be sufficient to cover indebtedness as of that date and interest in advance to June 27, 1933; in addition, the note on its face, in event of repayment, only provided a refund of "any unearned portion of interest previously paid to date of maturity." We find no conflict between the terms of the note of insured and the receipt of respondent for the proceeds thereof. There was no substantial evidence that an excessive charge of interest in advance on the note had been made or that insured was entitled to the credit claimed. Neither the letter nor the note shows that such an overcharge had been made. The claim for such a credit must be refused.

Appellant next contends that the policy was not effective until July 19, 1923, the date on which the premium was paid and the policy delivered; that the policy lapsed 9¼ years thereafter, on October 19, 1932; that figuring the value of the policy on said date and deducting the correct indebtedness, the net cash value was sufficient to keep the policy in force as term insurance to a date beyond the insured's death. Appellant says the effective date of the policy fixed the premium paying dates; that the first annual premium of $187.60 paid for one whole year of insurance from July 19, 1923; and that no paying of premiums as of June 27th, of each year, nor any course of dealing or recognition of June 27th as the annual premium paying date, could establish a construction at variance with the plain terms

of the policy. Respondent says that even upon such a basis, unless the alleged excess interest claim of $5.41 is deducted from the indebtedness, the net value of the policy lacked 94 cents (almost 3 days) of being sufficient to keep the extended insurance in force to the date of insured's death.

Appellant's actuary testified that, assuming the effective date of the $5000 policy was July 19, 1923, $9\frac{1}{4}$ annual premiums were paid, and the policy had a cash value of $1003, and computing the earned interest on the policy loan of $941.18 from August 1, to October 19, 1932, deducting this sum of earned interest from the $56.47 mentioned in the letter, and deducting the difference from the amount of the loan as unearned interest, the net value of the policy over indebtedness on October 19, 1932 was $106.07 and sufficient as a net single premium to extend the $5000 policy at insured's attained age of 59, for 325 days or to September 9, 1933. It will be noted that in making this calculation the actuary credited the note with the $5.41 alleged excess interest in advance on the note. He admitted he included the same in his calculation. Deducting $5.41 from the net figure given, we have a balance of $100.66 as the net cash value of the policy on October 19, 1932, assuming it lapsed on that date. Appellant's actuary further testified that $103.05 would carry the policy as extended insurance, at insured's attained age of 59 ▮▮▮ years, for 315 days, that is from October 13, 1932 to and including August 24, 1933. Apparently, therefore, $101.04 would be required for 309 days from October 19th, to and including August 24, 1933, but only $100.66 was available even if we assume October 19, 1932 as the date of lapse. Appellant's actuary on cross-examination in effect admitted that, figuring the unearned interest credit as figured by respondent, the net equity in the policy would not have been sufficient to extend the policy to the date of insured's death, even assuming the policy became effective July 19, 1923 and lapsed October 19, 1932.

▮▮▮ Assuming, however, that the amount was sufficient, we reach no different result. The policy provided that, "this policy and the application herefor, a copy of which is hereto attached, shall constitute the entire contract between the parties." The application was dated July 13, 1923, and provided: "I agree . . . that the insurance herein applied for shall not take effect until the payment of the first annual premium thereon, nor until part I and II of the application have been completed and have been actually received and approved by the company at its Home Office in Kansas City, Missouri, the policy shall bear the date of such approval, *unless otherwise requested in Statement 9 above.*" (Italics ours.) Under Statement 9 above were written the words: "date policy June 28, to hold age." The date of insured's birth was correctly stated as December 28, 1873. Age (nearest birthday) was given as 49. The annual premium

on the policy applied for was given as $187.60 to be payable quarterly. Although, the age (nearest birthday was given as 49, to hold that age the policy would have had to be dated June 27, 1923, because, if dated subsequently, the insured's age, nearest birthday, would have been 50, and the level premium rate would have been $196.10 per year.

The policy actually issued to and received by insured was dated June 27, 1923, and showed age 49, annual premium $187.60. The values shown in the policy are figured from its date and the policy provides: ''If this policy be legally surrendered to the company within thirty-one days after the end of the third year from *its date* or of any year thereafter, and all premiums to the end of that year have been paid in cash, the company will pay herefor, in lieu of all other benefits, the sum indicated in Column (1) of the accompanying Table of Guaranteed Values, less any indebtedness to the Company on account of this policy.'' (Italics ours.) It is conceded that the application for the policy was made on July 13, 1923, the date shown; that the application was received and approved by respondent on July 16, 1923; that the policy was delivered to insured and the premium paid on July 19, 1923; and that only 9¼ annual premiums were paid on the policy prior to lapse. Appellant quotes a portion of the consideration clause and says the $187.60 premium was for ''the first policy year.'' Appellant also quotes from the application, omitting the italicised portion supra, and contends that the policy did not become effective until the premium was paid; that the premium was paid and the policy delivered July 19, 1923; and that the insurance ran from that date; that date of payment of the first premium and the date of delivery control over the date stated in the policy, and since the premiums were payable quarterly, the premium paying dates were quarterly from July 19, 1923, and the policy lapsed October 19, 1932, 9¼ years from July 19, 1923.

Over appellant's objection respondent offered documentary evidence of a course of dealing between the parties, including premium notices, and letters from respondent, and an application for re-instatement, requests for extensions, and letters signed by the insured expressly recognizing June 27th as the annual premium paying date.

The court found that the policy was issued, delivered and became effective July 19, 1923, but ''in order to make the insuring age 49 . . . the policy was dated June 27th and was accepted and received by'' the insured. The court held that the policy took effect on July 19, 1923, but as of June 27, 1923, with the annual premiums due on the 27th of June, and quarterly premiums on corresponding dates, and that the recognition by the parties of June 27th in each year, as the date premiums were due, was binding on appellant.

Appellant relies upon Halsey v. American Central Life Ins. Company, 258 Mo. 659, 167 S. W. 951; Howard v. Aetna Life Ins. Company, 346 Mo. 1062, 145 S. W. (2d) 113; Johnson v. American

Central Life Insurance Company, 212 Mo. App. 290, 249 S. W. 115; Chestnut v. Security Mutual Life Ins. Company, 208 Mo. App. 130, 232 S. W. 203; Kennedy v. National Accident & Health Ins. Company (Mo. App.), 76 S. W. (2d) 748, and other cases, adopting the rule of construction ▄▄▄ in insurance policies that, where the policy (or the application, a part of the policy) contains the usual ''effective on delivery and payment'' clause, and the date of the policy and due date of premiums as written in the policy is another and different date, said date of *delivery* of the policy marks the beginning of the effectiveness of the policy and where the premium is paid for the annual period, the policy runs for one year from said date.

Respondent relies upon cases such as Prange v. International Life Ins. Company, 329 Mo. 651, 46 S. W. (2d) 523; Tabler v. General American Life Ins. Company, 342 Mo. 726, 117 S. W. (2d) 278; Winters v. Reserve Loan Life Ins. Company, 221 Mo. 519, 290 S. W. 109, and other cases. These cases, upon their facts, are distinguishable from the cases relied upon by appellant. The difference between the two groups of cases is fully discussed in the recent case of Howard v. Aetna Life Ins. Company, supra. The question presented here is whether the date of delivery and payment fixes the effective date of the policy and also the premium paying dates or whether the contract fixed the annual date for premium payments at June 27th as stated in the policy.

We think the controlling facts of this case, as heretofore set out, are easily distinguished from the controlling facts in the cases relied upon by appellant. In this case a specific date was agreed upon for a specific purpose. It is true that the application said June 28th, and the policy had to be dated June 27th to accomplish the clear and definite purpose indicated by the insured in the application. The policy, dated June 27, 1923 and providing for the payment of the annual premium ''on the twenty seventh day of June in every year thereafter during its continuance,'' was received by insured and the premium paid on the basis of insured's age as of that date. The purpose indicated by the application could only be accomplished on the theory that the date of the policy controlled and premium payments ran from that date. We hold that the evidence objected to did not tend to vary any plain and unambiguous terms of the policy, and was properly admitted. The contract fixed June 27th as the annual date for premium payments, 9¼ annual premiums were paid and the policy lapsed September 27, 1932. The net value of the policy must be determined as of that date.

▄▄▄ It is next contended that the court erred in refusing to admit evidence offered by appellant to prove the amount of insurance the premium paid would purchase at the insured's age of 50 years. This evidence was offered on the theory that there was a misstatement of age in the application; that insured took the rate for age 50 years;

and that the policy became effective on July 19, 1923. The evidence was properly refused.

Appellant insists that unless the amount of insurance is adjusted to what the premium paid would buy at insured's age of 50 years, the policy clearly violates Sec. 5840, R. S. 1939, Mo. St. Ann., Sec. 5729, p. 4369 which prohibits discrimination between insurants of the same class and equal expectations of life. This argument is upon the theory that the premium paying date of the policy began July 19, 1923, rather than June 27, 1923, as provided in the policy. Back dating the policy did not make the policy void or unenforceable as written (see, Landau v. New York Life Ins. Company, 199 Mo. App. 544, 203 S. W. 1003), nor authorize any adjustment of insurance on the basis of insured's attained age on July 19, 1923. The court cannot rewrite the contract of insurance upon the basis suggested. Prange v. International Life Insurance Company, supra.

Appellant finally contends that the court erred in sustaining respondent's demurrer to the evidence offered at the close of the whole case. Appellant says "this court should direct the trial court to enter judgment in favor of appellant." Appellant treats the evidence as conclusively establishing the liability contended for by her. In the trial each party requested specific findings of facts and certain conclusions of law favorable to their respective positions. The court found the facts and declared the law as requested by respondent. A peremptory instruction for defendant was also marked "given" and a request for judgment for plaintiff was refused. The court also refused a requested finding that the insurance was in effect for the full amount at the time of insured's death. The judgment finally entered recites that the court "finds the issues herein in favor of defendant and against the plaintiff." The evidence in the case is for the most part documentary. The questions presented involve the construction of documents the identity of which are conceded. The question of liability is one of law upon the record presented. It is unnecessary to consider other errors assigned. The court did not err in entering judgment for respondent herein. The judgment is affirmed.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the Court en Banc. *Leedy, Tipton, Clark* and *Douglas, JJ.*, concur; *Ellison, C. J.*, dubitante; *Hays* and *Gantt, JJ.*, absent.