EB LEE FERGUSON, (Plaintiff) Appellant, v. EMMA CLEO BETTERTON, (Defendant) Respondent, No. 43886—270 S. W. (2d) 756.

Division Two, July 12, 1954.

Motion for Rehearing or to Transfer to Banc Overruled, September 13, 1954.

*Price Shoemaker* and *Elmer E. Reital* for appellant.

998

*Pettijohn & Eiser* and *Walter A. Raymond* for respondent.

BENNICK, Special Judge.—This is an action for damages growing out of a collision between a Chevrolet coupe owned and driven by plaintiff, Eb Lee Ferguson, and a Ford coach owned and driven by defendant, Emma Cleo Betterton.

Plaintiff prayed judgment for $25,000 for personal injuries and $900 for property damage, aggregating $25,900. Defendant filed a counterclaim in which she sought damages of $35,000 for personal injuries and $350 for damage to her automobile, aggregating $35,350.

The jury returned a verdict in favor of defendant, and against plaintiff, on plaintiff's claim or cause of action, and in favor of plaintiff, and against defendant, on the latter's counterclaim.

Plaintiff alone asked for a new trial; and his motion having been overruled, he gave notice of appeal, and by successive steps has caused the case to be transferred to this court, where appellate jurisdiction lies by reason of the amount remaining in dispute, which, with the counterclaim eliminated, is the sum of $25,900, the amount of ▬ plaintiff's claim upon which he was defeated at the trial, and which, by this appeal, he seeks to have restored to the status of a pending cause of action. Const. of 1945, Art. V, Sec. 3, V.A.M.S.; McQueeny v. National Fidelity Life Ins. Co., 350 Mo. 469, 166 S.W. 2d 461;

Mueller v. Schien, 352 Mo. 180, 176 S.W. 2d 449; Reiling v. Russell, 345 Mo. 517, 134 S.W. 2d 33.

The accident happened about 1:55 p.m. on November 18, 1952, at a point on U.S. Highway No. 275 approximately one mile north of the dividing line between Atchison and Holt Counties.

Highway No. 275, which runs north and south at the point in question, is a conventional paved highway 20 feet from curb to curb, but with this peculiarity that the portions marked off for northbound and southbound traffic by a dividing line are not of equal width. On the contrary, the southbound strip or strip to the west, which comprises the original paved portion of the highway, is only 9 feet wide, while the northbound strip or strip to the east, which has been added more recently, is 11 feet wide. So far as the lay of the land is concerned, the highway extends slightly upgrade on a gradual rise from a distance of 1,584 feet south of the point of collision to the crest of the hill some 300 feet to the north of where the accident occurred.

A gravel lane known as Strickler Road runs east and west and crosses Highway No. 275 at right angles. On both sides of the highway are stop signs located about 15 feet back from the respective edges of the pavement and so placed as to be to the right of one attempting to enter upon the highway. Along the south side of the portion of Strickler Road to the east of the highway is an embankment covered with weeds and other growth, which runs back a considerable distance from a point opposite the stop sign on that side of the highway, and shuts off the view of a vehicle approaching the highway from the east to a motorist traveling northwardly on the highway towards the intersection.

On the occasion in question plaintiff was driving northwardly on Highway No. 275 at a speed which his evidence fixed at from 45 to 50 miles an hour. According to his version of the facts, he was at all times on his side of the pavement, or to the right of the dividing line. The day was clear and sunny, and the pavement dry. A guest, Roy Strahl, was sitting in the seat beside him. Plaintiff was familiar with the surroundings, and knew of the stop signs on Strickler Road.

While plaintiff was approaching the intersection from the south on Highway No. 275, defendant was driving westwardly on Strickler Road towards the intersection with the intention of turning left upon the highway and then traveling southwardly to her ultimate destination. Her granddaughter was in the car with her.

When plaintiff himself first saw defendant's car, its front wheels were on the pavement, and his own car was from 75 to 100 feet away. Defendant's car was moving very slowly, but it was continually in motion, so his testimony disclosed, from the time he first saw it until the moment of the impact. Strahl saw defendant's car a little sooner than plaintiff, having caught sight of it as its front end came out into

view from behind the embankment on the south side of Strickler Road. He estimated that it was some 12 feet from the edge of the pavement when he observed its approach, and that plaintiff's car was then 100 feet away. He corroborated plaintiff's testimony that defendant's car kept moving forward, and judged its speed at about 5 miles an hour.

Plaintiff's evidence was to the effect that he applied his brakes as soon as he saw defendant's car, but was unable to stop short of a collision as defendant's car moved out directly in his path. According to plaintiff's personal version of the facts, defendant's car was across the east lane of the highway when it was struck, with its front wheels not quite to the dividing line. Strahl corroborated plaintiff as regards the position of defendant's car. Plaintiff also testified that he made no attempt to swerve his car in either direction. It was brought out in this connection that there was a dirt shoulder 8 feet wide extending along the east edge of the pavement.

A member of the State Highway Patrol who came to the scene some 30 minutes after the accident had taken note of skid marks and the like and substantially corroborated plaintiff in his version of the facts. While the officer testified that the front of defendant's car had been about 3 feet across the dividing line at the time of the collision, he indicated that the impact had occurred east of the dividing line and wholly in the northbound lane. Plaintiff's car had left skid marks on the pavement for a distance of 30 feet which showed that at the time the brakes were applied the left wheels were about a foot east of the dividing line, and on the line at the moment of the collision. Other marks disclosed that defendant's car was driven 18 feet to the north by the force of the impact. Both cars came to rest facing roughly northwest, with an interval of 12 feet between them.

While the evidence for both parties necessarily followed a common pattern as to the general manner in which the accident had occurred, defendant's evidence was much at variance with that for plaintiff in many vital particulars.

Defendant testified that she drove to within a foot and a half of the slab and then stopped to let some northbound traffic go by. There was no southbound traffic on the highway at the time. After from 5 to 7 cars had passed, she looked both ways, and seeing nothing in either direction, started up her motor and moved out upon the pavement. It appears that she had but little gasoline in the tank, and had turned off her motor while she was stopped in order to conserve her fuel. According to her version of the facts, she had crossed over completely into the southbound lane, and was preparing to turn left upon the highway when she accidentally killed her motor. At this precise moment plaintiff's car was not in sight, but almost immediately it appeared approaching in the southbound lane and traveling toward her at a speed of 60' to 70 miles an hour. The closer plaintiff

approached, the farther he veered to his left, until the collision occurred, with his car striking hers directly in the center.

Plaintiff submitted his case to the jury by his instruction No. 1, which was predicated upon the theory that while he was driving his automobile northwardly on the highway in the exercise of the highest degree of care, defendant failed to obey the stop sign at the intersection of Strickler Road with the highway, and drove her car out upon the pavement and into and across the path of plaintiff's car when plaintiff's car was so close upon her that plaintiff was unable to stop or swerve it short of a collision.

The instruction concluded with the hypothesis that if the jury found that defendant was negligent in driving her car in such a manner, and that as a direct result of such negligence on her part her car was caused to collide with plaintiff's car whereby plaintiff was injured and his car damaged, then the verdict should be for plaintiff on his claim and against defendant on her counterclaim, unless the jury should find from all the facts and circumstances in evidence that plaintiff had himself been guilty of negligence as set out in other instructions, and that such negligence, if any, had directly contributed to cause his injuries and the damage to his car.

Plaintiff's complaints on this appeal are directed at the giving of instructions A and B on behalf of defendant.

■ Instruction A told the jury that plaintiff's alleged contributory negligence was one of the defenses in the case, and that under the law plaintiff was required, while operating a motor vehicle upon one of the highways of the state, to exercise the highest degree of care, by which was meant such care as a very careful and prudent person would exercise under the same or similar circumstances.

The instruction then charged the jury that if they found and believed from a preponderance of the evidence, as defined in ■ other instructions, that plaintiff, in the operation of his car, was negligent with respect to certain stated acts of omission and commission, although, by the exercise of the highest degree of care on his part, he could have done or performed any of such acts with safety to himself; and if they further found that such failure contributed to cause plaintiff's injury and damage, then they should find that he was guilty of contributory negligence preventing his recovery, and their verdict should be for defendant both on plaintiff's claim and also on her counterclaim, unless they found that defendant was herself guilty of negligence as set out in other instructions, and that such negligence directly contributed to cause her injury and damage.

The several acts of omission and commission with respect to which plaintiff was charged with negligence were set forth in the instruction in the following form:

"A. Failed to give any warning of his presence upon said Highway No. 275, when he knew or should have known the de-

fendant's vehicle was on said highway or approaching and entering upon said highway, or

"B. Failed to yield the right of way to vehicle defendant was driving when the defendant had entered the intersection of county road and said Highway No. 275, if you so find, prior to and before plaintiff had entered said intersection, or

"C. Operated said motor vehicle at a high and dangerous rate of speed under the circumstances then and there existing, or

"D. Failed to slacken the speed of said motor vehicle he was driving, when he knew or should have known that defendant's vehicle was on and entering upon said highway, or

"E. Failed and neglected to turn his automobile to the right when, by so doing, he could have avoided the collision with defendant's car."

It is to be observed that the above instruction served the dual purpose of not only submitting the issue of plaintiff's contributory negligence as a defense to plaintiff's claim, but also of directing a verdict for defendant on her counterclaim in the event of a finding of plaintiff's negligence in any one or more of the respects enumerated. Inasmuch as plaintiff prevailed on the counterclaim, any error in the instruction is now immaterial in so far as it might have affected his liability on the counterclaim; and the question of the propriety of the instruction must therefore be considered entirely from the standpoint of whether it was prejudicial to plaintiff's rights in any substantial manner in connection with the issue of his contributory negligence.

Plaintiff argues in the first instance that there was no substantial evidence to support the submission of the question of his contributory negligence in the several respects enumerated. He points out in this connection that since the submission of the various charges was in the disjunctive, it was essential that each and all of such charges should have been supported by the evidence, and not merely that there should have been support for some one or more of them. This for the reason that if the inclusion of any one of such charges was erroneous, whether for lack of evidence to support it or because of vagueness and uncertainty in the manner of submission, the instruction would be necessarily erroneous, since it would be impossible in that situation to tell whether the verdict against plaintiff was founded upon a charge which had been properly or improperly submitted. Yates v. Manchester, 358 Mo. 894, 217 S.W. 2d 541; Carlisle v. Tilghmon, Mo.Sup., 159 S.W. 2d 663; Whitehead v. Fogelman, Mo.App., 44 S.W. 2d 261. And even if the court should find him wrong in his complaint of lack of evidence to warrant the giving of the instruction, plaintiff contends that the instruction was none the less erroneous for failing to hypothesize the facts disclosed by the evidence which the jury should have been required to find in order to convict him of contributory negligence.

It is enough to say without extended discussion that there was substantial evidence to support the submission of each of the five specifications of negligence set forth in the instruction. Plaintiff must of course bear in mind that in determining the sufficiency of the evidence to warrant the giving of the instruction, the evidence must be viewed in the light most favorable to defendant at whose instance and request the instruction was given. LeGrand v. U-Drive-It Co., Mo.Sup., 247 S.W. 2d 706; Rothe v. Hull, 352 Mo. 926, 180 S.W. 2d 7; State ex rel. Kansas City Public Service Co. v. Bland, 353 Mo. 1234, 187 S.W. 2d 211. It will be recalled that defendant's version of the facts was at substantial variance in many vital particulars with the details of the occurrence which plaintiff's evidence had disclosed. If there was error in the instruction, it was not for lack of evidence upon which to base it, but rather for what is actually the burden of plaintiff's complaint—that the manner of submission was too broad, indefinite, and uncertain to afford a proper guide for the jury in resolving the issue of his contributory negligence.

 It has been emphasized that the purpose of a verdict-directing instruction (such as the one now under consideration) is to make clear to the jury the essential fact issues which they are called upon to decide, and that where the evidence relating to such issues is conflicting and divergent, some of it supporting and other portions opposing the particular verdict, the instruction should in that event hypothesize, either by express recital or by reference to other instructions, the facts essential in law to support the verdict, whether it be to direct or to defeat a right of recovery. Hooper v. Conrad, 364 Mo. 176, 260 S.W. 2d 496; Knight v. Richey, 363 Mo. 293, 250 S.W. 2d 972; Sommer v. St. Louis Public Service Co., Mo. App., 262 S.W. 2d 335.

Viewing the instruction in the light of the above requirement as to its sufficiency, we see no escape from holding it erroneous for failing to hypothesize essential facts, and particularly so as regards charge C—that plaintiff "operated said motor vehicle at a high and dangerous rate of speed under the circumstances then and there existing". It has already appeared that aside from such matters as the types and locations of the respective highways and the general directions in which the parties were proceeding, the evidence was in direct conflict as regards most of the circumstances then and there existing which would have had vital relation to the question of whether plaintiff could have properly been found to have been driving at a high and dangerous rate of speed. Yates v. Manchester, supra; Dahlen v. Wright, 361 Mo. 524, 235 S.W. 2d 366.

Defendant insists, however, that plaintiff is in no position to complain or take advantage of any vagueness or generality in her instruction A because of language in his own instruction No. 1 which exhibited the same fault as was to be found in defendant's instruction,

and amounted to a participation or acquiescence in the theory of submission adopted by defendant.

We are not impressed by the first of defendant's suggestions, namely, that plaintiff, by hypothesizing in his own instruction as a condition to his recovery that the jury should find that on the occasion in question he was driving his automobile "in the exercise of the highest degree of care", thereby submitted the question of his own negligence in a manner even more unlimited than that chosen by defendant. The quoted requirement actually served no other purpose than to inform the jury as to the degree of care imposed on plaintiff, and was not meant to advise the jury as to what facts or circumstances shown by the evidence would indicate that he had conformed to the obligation resting upon him. Pearrow v. Thompson, 343 Mo. 490, 121 S.W. 2d 811.

However the proposition that plaintiff effectively acquiesced in the manner of submission adopted by defendant is a matter of much more serious import.

As has already appeared, plaintiff concluded his instruction No. 1 with a direction for a verdict in his favor upon both his ▌▌▌ own claim and defendant's counterclaim, unless the jury should find from all the facts and circumstances in evidence that he was guilty of negligence "as set out in other instructions herein", and that such negligence directly contributed to cause his injury and damage. Defendant's instruction A was the only instruction submitting the issue of plaintiff's contributory negligence for a definite finding upon it, and the reference in instruction No. 1 to other instructions must therefore be necessarily taken as a reference to instruction A. By such a reference plaintiff adopted the requirements of instruction A upon the issue of his contributory negligence, and thereby waived any right to complain about the vague or general manner in which the issue was submitted. Arditi v. Brooks Erection Co., Mo.Sup., 266 S. W. 2d 556, 560; Consolidated School Dist. v. West Missouri Power Co., 329 Mo. 690, 46 S.W. 2d 174; Chamberlain v. Missouri-Arkansas Coach Lines, Inc., 351 Mo. 203, 173 S.W. 2d 57.

As a matter of fact, plaintiff's acquiescence in the form and content of defendant's instruction A was further emphasized by his instruction No. 2, which told the jury that if they should find and believe from the evidence that both plaintiff and defendant were guilty of negligence "as set out in the instructions herein given", their verdict should be for defendant on plaintiff's claim and for plaintiff on defendant's counterclaim. Such unqualified reference to the other instructions for a specification for what would constitute negligence on the part of the respective parties was in actual effect no less an adoption of instruction A than the concluding clause of instruction No. 1.

■ Defendant's instruction B, which is the other instruction of which plaintiff complains, told the jury that if defendant entered the intersection from plaintiff's right either before or at approximately the same time that plaintiff entered the intersection, then defendant had the right of way, and that even though this did not relieve her of the duty to exercise the highest degree of care, it did entitle her to assume that plaintiff would respect her right of way until such time as she observed to the contrary.

This instruction on right of way was obviously predicated upon R.S. Mo. 1949, Sec. 304.020(12), V.A.M.S., which was in effect at the time of the accident. The present statute (R.S.Mo.1949, Sec. 304.021, V.A.M.S.) did not go into effect until long after the accident had occurred.

The truth is, however, that the former right-of-way statute, though in effect at the time of the accident, was none the less inapplicable to the case because of the presence of stop signs on Strickler Road, which had apparently been placed in their respective locations by the State Highway Department under legislative authority. R.S. Mo. 1949, Sec. 227.220, V.A.M.S. In other words, the mere fact that defendant reached the intersection first did not of itself give her the unqualified right to proceed, but instead her right to proceed depended upon the particular facts and circumstances existing at the time with reference to traffic conditions, speeds, and distances. State v. Adams, 359 Mo. 845, 224 S.W. 2d 54. Nevertheless the evidence was all agreed that defendant not only reached the intersection first, but actually entered the intersection first, which fact, wholly without any statutory direction, made it proper for her to continue on across, provided only, as the instruction recognized, that she observed the highest degree of care; and at the same time entitled her to assume that plaintiff would respect her position in the intersection ahead of him until his conduct became such as to charge her with knowledge to the contrary.

The instruction was not a verdict-directing instruction, and under the evidence in the case it could not have been prejudicial to plaintiff's rights. Neither was it in conflict with plaintiff's instruction No. 1, which told the jury that if defendant failed to heed the stop sign before entering the intersection and drove her car into and across the path of plaintiff's car at a time when ■ plaintiff's car was so close that he was unable to stop or swerve short of a collision, then the verdict should be for plaintiff on his own claim as well as on defendant's counterclaim. Instruction B in nowise told the jury that defendant was under no obligation to obey the stop sign, but on the contrary announced the necessity that she exercise due care in entering upon and crossing the intersection.

It follows that the judgment of the circuit court should be affirmed, and it is so ordered. *Stone,* Special Judge, and *Leedy,* Acting Presiding Judge, concur.