[No. 19683. Department One. March 30, 1926.]

MARY McKENNEY, *Appellant*, v. PHOENIX MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, *Respondent*.[1]

[1] INSURANCE (101, 102)—NON-PAYMENT OF PREMIUM—SUFFICIENCY OF PAYMENT—TO AGENT OR BROKER. A special finding by a jury to the effect that a note had been given by the insured in payment of the second annual premium on a life insurance policy is not sustained by the evidence where it is wholly unsupported by anything but an inadvertent statement in a dun sent out by the agent, and contradicted by all the circumstances, and if given at all, was unauthorized by the policy, and given to an agent not authorized to take it.

[2] SAME (54-1)—PREMIUMS—TIME FOR PAYMENT. When a life policy is antedated at the request of the insured, an agreement in the policy fixing the premium paying periods as commencing on such date is binding on the parties.

[3] TRIAL (138)—CHALLENGE TO SUFFICIENCY OF EVIDENCE—SPECIAL INTERROGATORIES AS WAIVER. Respondent's submission of an

[1] Reported in 244 Pac. 560.

issue to the jury by requested instructions for a special finding thereon, does not preclude the respondent, after an adverse finding by the jury, from assigning on appeal that there was no evidence to warrant submission of the issue, where the submission was compulsory, the respondent having moved for non-suit and directed verdict on the ground that there was no evidence on the issue, and excepted to adverse rulings thereon.

Appeal from a judgment of the superior court for King county, Smith, J., entered June 9, 1925, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff. Affirmed.

*Stratton & Kane* and *Elmer W. Leader,* for appellant.

*Poe, Falknor, Falknor & Emory,* for respondent.

Holcomb, J.—Appellant, the widow and beneficiary of a life policy effected on the life of her husband, William D. McKenney, brought this suit to recover the full amount of the policy and interest. Upon a trial to the court and a jury, the jury returned a verdict in favor of appellant for the amount of the policy, and also answered a special interrogatory in the affirmative, which will be hereafter noticed.

Upon motion for judgment n. o. v., the trial court granted the same and entered judgment for respondent. The trial court had denied motions for nonsuit at the close of appellant's case, and for directed verdict at the close of all the evidence, stating that it thought it better that a complete record should be made in the case by both parties in case of appeal.

The insurance policy sued on bears date December 17, 1920. It recites that it is in consideration of the application therefor, made a part of the policy, and the payment of premiums to be made as prescribed; the face of the policy recites "the premium to be eighty and 15/100 dollars payable on the 17th day of

each December and June until twenty full years premiums shall have been paid, or until the death of the insured if prior thereto.'' The policy is what is called a life endowment policy. The endowment date is December 17, 1940. As to the premiums; the policy provides that all premiums are payable in advance at the home office in Hartford, Connecticut, but will be accepted, if paid to an agent of the company in exchange for a receipt separate from the policy and signed by an executive officer; it also provides for thirty-one days grace for nonpayment of any premium, during which time the policy should remain in force, and if not paid at the specified dates or within thirty-one days thereafter, then the policy should immediately lapse as of the date when the defaulted payment was due. The policy also provides that it shall lapse by reason of the lapse in payment of the premium, and cannot be reinstated, except on furnishing evidence of the insurability of the insured, and payment of the arrears of premiums.

There is a provision that the policy and the application therefor constitute the entire contract between the parties; that no modification of the printed policy can be made, except over the signature of an executive officer of the company, to-wit: the president, a vice-president, the secretary or an assistant secretary. Part one of the application, signed by the insured, dated December 17, 1920, directs the assured to state what are features desired, such as automatic premium lien, dating of policy, interim premium, optional settlement, extra policies, etc., which was filled in this portion as to the dating of the policy, ''Date policy Dec. 17th, 1920.'' Another portion of the application specifies that the insurance applied for shall not take effect, until the issuance of the policy and the

payment of the first premium therefor. The policy. was actually issued and delivered on January 5, 1921.

There is a binding receipt, so-called, which was attached to the application, but was not signed by any agent or officer of the insurer, or detached from the application and delivered to the insured. By its terms it binds the insurance company to give insurance, if the sum paid be less than the first premium, without evidence of insurability, on delivery of the company's receipt for the full premium therefor, within sixty days of the date of the policy.

The first premium, being the first semi-annual installment, was paid in full on the execution of the application by giving a note therefor to the solicitor for the company. The company permits the solicitor to accept as first payment of premium a note, authorizing a ninety-day note. The note is required to be submitted by the solicitor to the general agency, which transmits it to the home office, where it is held until about fifteen days before it is due, when it is turned over to the agent or solicitor, who collects it. Both the local office and the home office therefore had knowledge that the note had been given in payment of the first premium on this policy. The note was accepted as payment of the first premium by the company, and, if the insured had not paid it, the solicitor would have had to pay the company.

Upon payment of the note for the first premium, which was some time in March, 1921, the home office of the company issued to the insured a receipt for the first premium on the company's standard form, which receipt also showed that the insurance would expire on the date when the second semi-annual premium became due, which would be June 17, 1921. A carbon copy, and not the original of this receipt, was produced

in evidence, since the original was sent to the insured.

There is no evidence whatever that, at the time of the execution of the application on December 21, 1920, more than one note was taken by the solicitor, the one for the first semi-annual premium. The company prohibited the taking of notes for the second semi-annual premium at the time of the execution of the application, and prohibited the taking of notes maturing later than ninety days from date. Had the insured executed a note for the second semi-annual premium at the time of the execution of the application for the policy, it would, under the rules of the company, have had to mature within ninety days from the date of the application. Prior to June 17, 1921, the due date of the second semi-annual premium, the home office of respondent, although not required by the terms of the policy to do so, sent a notice to the insured that the second payment would fall due June 17, 1921. A copy of this notice was introduced in evidence. A notice to the same effect was found among the insured's effects, which had probably remained unopened up to the time it was found, sometime after July 20, 1921. The original receipt for the second semi-annual premium was sent by the home office to the Seattle general office for delivery to the insured upon payment of the premium. It was never delivered.

The insured suffered a paralytic stroke on May 30, 1921, and from about June 15 to the time of his death, January 23, 1923, was wholly incompetent mentally to transact any business whatsoever.

The solicitor, being about to make a trip to the east in May, 1921, testified that before he left he called the office of the insured, and was answered by appellant, and told her that the second semi-annual premium would be due June 17. After the return of the solic-

itor from his trip east he wrote the insured the following letter:

"July 1, 1921.

"Mr. Wm. D. McKenney,
   303 Gottstein Bldg.,
      Seattle, Wash.
"My Dear Mr. McKenney:
   "The premium on your second Phoenix policy, amount $80.15, covered by note, fell due on the 17th of June. I only returned last evening from my trip and notice that you have taken care of the premium on the other policy.
   "Kindly send me a check to cover the above mentioned premium, and oblige,

"Yours very truly,
(Signed) "A. E. RANSOM,
"Special Representative."

The answer of the jury to the special interrogatory submitted to it was in the affirmative, that the insured executed and delivered to the defendant, or its agent, his note in payment of the second semi-annual premium on his policy.

There is absolutely no evidence of any kind or character in the record to the effect that the insured ever gave any note for the second semi-annual premium, except that in the letter of the solicitor quoted above. The solicitor explained that by saying that he had been gone about six weeks, that a lot of correspondence had piled up, that the stenographer might have inserted that statement, "covered by note" in the letter, but that he had not intended to so state; that he did not notice that it was in the letter, and that it was inadvertent and not the fact; that the second semi-annual premium was not covered by a note. He also explained that, if the note had been given for the second premium, there would be no need of giving a note until after July 18, when the grace period for the payment

of the premium had expired, because it would be cov-
ered until that time; that, if given after that time, it
would not be due and he could not call for payment.
His letter was dated July 1. The premium was due
June 17. The grace period expired July 18. The
grace period having elapsed and the insured being un-
able to furnish evidence of insurabiltiy thereafter, the
policy was cancelled and forfeited.

Respondent pleaded affirmatively, and the evidence
shows, that the policy and the application were ante-
dated to December 17, in consideration of a reduction
of the premium rate by considering the insured's in-
surable age as 51 years, whereas, as shown in the ap-
plication he was born June 17, 1869, and, if the policy
had been dated after December 17, his nearest birthday
would have made his insurable age 52.

Appellant, to reverse the judgment n. o. v., entered
by the trial court, assigns error thereon, and on not
entering judgment on the verdict.

[1]. The principal contention of appellant is, and
must be, that there was evidence sufficient to go to the
jury that a note had been given by the insured in pay-
ment of the second semi-annual premium. All of the
evidence, except that of the letter hereinbefore quoted,
is to the contrary. Appellant produces no other affirm-
ative evidence to that effect. If any note were given,
it was of necessity given to the solicitor, who had no
authority to take a note for the company, at least for
the second premium, and the giving of such a note
would not be payment of the second semi-annual pre-
mium as required by the policy, and requested in the
application. The insured must, up to the time he be-
came incompetent, have known, and the beneficiary,
appellant, thereafter knew, what the terms of the

11—138 WASH.

policy were.   They knew that the policy called for the
payment of premium on the 17th day of each December
and June until twenty full years' premiums should
have been paid, or until the death of the insured, if
prior thereto.   The records of the company show no
payment of the second semi-annual premium due June
17, 1921, with thirty-one days grace thereafter, by note
or otherwise.   The solicitor, Ransom, who wrote the
letter, declared that no note had been given for the
second premium; and his undisputed explanation of
the phrase in the letter is reasonable and probable.

The giving of a note to the solicitor for the amount
of the premium, or the amount of the premium less
the solicitor's commission, as is contended by appel-
lant, would not be complying with the terms of the
policy.   The insured and the insurer made their own
contract.   The contract is plain and unambiguous.   On
that feature, under this policy, the case is governed
by *Gibson v. New York Life Ins. Co.*, 102 Wash. 180,
172 Pac. 920.   Since the evidence was uncontradicted
that there was no note or cash given to the company
in settlement of the second semi-annual premium, and
no receipt obtained, in accordance with the terms of
the policy, it was error to submit that question to the
jury, and the court was correct in so holding on the
motion for judgment n. o. v.

[2]  Appellant also contends that the insured was
entitled to six months and thirty-one days insurance
from the date the policy became effective, either by
payment of the first premium or by medical examina-
tion and the issuance and delivery of the policy; that
the policy was not in fact issued and delivered until
January 5, 1921; wherefore, the policy was thereby ex-
tended as to the date of paying premiums for six
months from January 5, 1921, which would make the

premium paying date July 5, instead of June 17, and with thirty-one days grace from July 5.

A number of cases to that effect are cited and some quoted from by appellant. While it is true that policies may not take effect until delivered, while the insured is alive and in good health, nevertheless, the premium paying period may be fixed by the parties, regardless of the time when the policy takes effect. We find that the great weight of authority is to that effect. In *Wilkinson v. Commonwealth Life Ins. Co.*, 176 Ky. 833, 197 S. W. 557, 6 A. L. R. 769, the court held that the time for payment of the premiums on a life insurance policy must be reckoned from the date of the policy, and not from the time of delivery, although the policy provides that it shall not be in force until delivered.

An extensive note is appended by the editors in 6 A. L. R., commencing on page 774, many of the cases being extensively quoted and analyzed. The general rule is stated by the editors to be that, when the policy is antedated at the request of the insured, the agreement is binding on both parties, and the premium paying period begins on the date so inserted. (Page 786.) To the same effect is *Wolford v. National Life Ins. Co.*, 114 Kan. 411, 219 Pac. 263, 32 A. L. R. 1248. In the last cited case, there is a very extensive and thorough review and analysis of the authorities on this proposition. In 32 A. L. R., commencing at page 1253, there is an extensive case note supplementing that in 6 A. L. R., 780. Again it is shown that the great weight of authority is to the effect herein stated.

[3] Appellant also urges that, when the jury brought in a special verdict to the effect that the insured gave a note to respondent or its duly licensed agent in payment of the second semi-annual premium,

such finding was binding upon respondent, because the jury found against respondent on its own theory of the case. It is stated that the only evidence in the case that the second semi-annual premium was paid is the letter written by respondent's duly licensed solicitor. Instructions were requested by respondent and given by the court submitting that question to the jury as an issue of fact. Under these instructions, it is insisted that the jury found by special verdict that a note was made, executed and delivered to respondent in payment of the second premium. It is therefore contended that respondent is bound by its own instructions, and the verdict rendered in accordance therewith. In other words, it is contended that respondent cannot, after itself submitting the issue of whether or not a note was given in payment of the second premium to the jury, telling them that it is an issue of fact for their decision, after the jury have found against it, say that there was no such issue in the case, and that there was no evidence that any note was given. 14 R. C. L., p. 815, is quoted as follows: "Hence, the rule is universally accepted that a party cannot complain of an instruction given at his own request, . . ." To the same effect: *Reiner v. Crawford,* 23 Wash. 669, 63 Pac. 516, 83 Am. St. 848; 30 Cyc. 1788.

But respondent's submission of this issue was compulsory. Respondent had, during the trial, urged the insufficiency of the evidence to warrant the submission of the issue as to whether a note was given for the second premium to the jury, and excepted to the court's adverse ruling. When the court decided to submit that issue to the jury, respondent was compelled to submit to the ruling of the court. The fact that it requested the court to make a special finding, on the question of whether a note was given by the insured for

the payment of the second semi-annual premium, does not make the answer binding, if there is no evidence to support the jury's finding. Respondent had sufficiently protected its rights by its motions for nonsuit and a directed verdict, and exceptions to the denials thereof. It cannot be held to be estopped by having submitted what the court then held was an issue of fact for a special finding by the jury and submitting instructions upon the law governing the same. *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904.

Having read the entire record with care, we are thoroughly convinced that the court was right in granting judgment n. o. v.

Affirmed.

TOLMAN, C. J., FULLERTON, PARKER, and MAIN, JJ., concur.