## No. 15,340.

COLUMBIAN NATIONAL LIFE INSURANCE COMPANY *v.*
MCCLAIN.
(174 P. [2d] 348)

Decided July 1, 1946.   Rehearing denied November 16, 1946.

Messrs. ELLIS, MELVILLE & WINNER, NORMA L. COM-STOCK, Mr. NORMAN H. COMSTOCK, for plaintiff in error.

Messrs. WOOD, SHUTERAN, ROBINSON & HARRINGTON, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

DEFENDANT in error, Merle M. McClain, recovered judgment against the Columbian National Life Insurance Company on a policy of insurance issued on the life of her husband, Edward G. McClain. We shall refer to plaintiff in error as the company, to Edward G. McClain as McClain and to defendant in error as plaintiff.

McClain applied and tendered premium for a $2,000 life insurance policy, premium payable annually. Part I of his application recited that the date of his birth was November 24, 1904; age, nearest birthday, thirty-five. It was dated May 23, 1940. Part II of the application showed medical examination and signature of both McClain and the examiner, all as of May 24, 1940, on which date his nearest birthday was his thirty-sixth. He was given a receipt for his premium payment which recited that the insurance would "be in force from the date of the completion of Part II of his examination" provided the company found him insurable and approved the policy.

Thereafter, under date of June 11, 1940, the company's agent wrote McClain that the company had rejected his application, and, "On account of your weight the premium has been raised $4.72 per thousand or a total of $9.44 for the two thousand. I believe we are fortunate in having it issued as such and I would suggest that you keep it." With that letter he enclosed a policy dated May 23, and suggested that McClain sign an enclosed printed form of "Amendment to Application" and send check for the balance of premium. However, McClain did not then accept this proposal and nothing further was done until nearly three months later when, on September 6, 1940, the agent personally visited McClain and persuaded him to accept a policy at the higher rate. McClain thereupon paid the additional premium required and signed an "Amendment to Application" dated September 6, 1940, agreeing to the "Corrections and Amendments" in his application dated the 23rd day of May, 1940, in the space headed, "Corrections and Amendments." In that document, signed by McClain, he was required further to certify that he had had no sickness, injury or impairment of health since the date of examination under the original application; that there had been no change in his family history and that he had made no application for life insurance that had not been granted as applied for. Instead of receiving a new policy, McClain was given the same policy which had been tendered to him with the letter of June 11. It was plainly dated the twenty-third day of May, 1940, and called for the payment of premium on the twenty-third day of May in each year. It was labelled, "Ten year term policy." It provided for "additional annual premium" for double indemnity and further "annual premium" for waiver of premium agreement and recited, "annual premium $33.84."

To the original application, photostatic copy of which was attached to the policy, there had been added under the title "Corrections and Amendments (For Home Of-

fice Use Only)" the words "Eliminate Extended Insurance" written with pen; then, in type so similar to that surrounding it as to be inconspicuous, the words "Issue policy with age of applicant advanced 8 years, total annual premium $33.84," the figures being inserted with pen. On the policy itself, in the upper lefthand corner of the first page, opposite the policy number and overshadowed by the name of the company, which was printed in large type, were the words "Age 43 Rated." Under "Benefits and Provisions" the policy provides under the heading "Premiums" that "Premiums are payable annually," and under the heading "Grace Period" that "Thirty-one days' grace is allowed for the payment of all premiums after the first." •

McClain died June 30, 1941, without paying a second premium on the policy. The company contends that the effective date of the policy is May 23, 1940, as shown on its face, in which event the policy had lapsed prior to McClain's death on June 30, 1941. Plaintiff claims, and the trial court found, that the term of the policy should extend from September 6, when the policy was delivered and paid for, or at least from June 11, when the company first made its counteroffer of a different policy at a higher rate of premium. Either of these dates would continue the policy in force until the time of McClain's death.

The rules of construction of insurance policies are simple; the application often difficult. In construing such a contract of insurance, the court should attempt to ascertain and carry out the intention of the parties which is to be ascertained, if possible, from the words of the contract alone. It should be given a reasonable construction such as intelligent businessmen would give to it, and where, by reason of ambiguity in the language of the policy, there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. The

courts will construe the policy, when possible, so as to uphold, rather than avoid, the contract and to accomplish the purpose for which it was made. Forfeiture for nonpayment of premiums is not favored nor authorized unless clearly required by the wording of the contract.

The original application was rejected. The sending of the policy to McClain on June 11 was only a counteroffer which was not then accepted. When on September 6 the agent of the company renewed the offer and induced McClain to take insurance and pay the premium, McClain signed what constituted a new application for a different policy than before applied for and at a higher premium. This policy was by the terms of his application to be in effect on delivery of the policy and payment of premium. There is no word as to predating the policy and no word as to a term of less than ten years or as to the first "annual" premium payment giving him protection for eight and a half months instead of the full year.

With this situation existing, the insurance company delivered to McClain a policy dated back three and a half months prior to the date when it was delivered or paid for or even applied for. Beyond dispute, this policy went into effect on September 6, 1940, and the annual premium should have provided insurance coverage for one year from that date, unless there is evidence of agreement to the contrary between the parties.

As to the applicable rule generally, where there is an express provision in the application that the policy shall not take effect until payment and delivery, yet the policy bears earlier date and provides for the payment of premiums on specific dates computed from the date of the policy, there is a conflict of authority. 111 A.L.R. 1420. In this jurisdiction the rule is announced in our opinion in *Shinall v. Insurance Co.*, 91 Colo. 194, 14 P. (2d) 183, where we resolved the ambiguity in favor of the insured and held that the grace period and term of the policy were controlled, not by the date of the policy,

but by the date of its effective delivery and payment of premium thereon. The rule as established in the Shinall case should control here and support the judgment for the plaintiff unless there is some distinguishing feature here established. In the Shinall case the policy provided that if, after being in force one full year from its date, it should lapse for nonpayment of premium the grace period should continue it in effect, and yet we held that it lapsed, not one full year *from its date;* but one full year from its *issuance and delivery.* In the instant case the policy provides that premiums are payable annually and that "thirty-one days' grace is allowed for the pay-. ment of all premiums after the first." In the former case the termination of the policy through lapsing and the grace period are specifically dependent on the date of the policy. In the instant case it depends on the term covered by the annual premium. We find no essential difference therein. Counsel for the company urge as a further distinguishing feature that here, but not in the Shinall case, the policy was predated for insured's bene- fit to reduce his insurable age which increased a year on May 24, and that the lower premium rate of insur- ance at the age ending May 23 was consideration for the predating of the policy. The terms of a contract cannot be changed even for the benefit of a party with- out his knowledge and approval and, as the event dem- onstrated in this case, predating the policy was not of benefit. The contract provides that it is for a ten-year term, not nine years and eight and a half months. It provides that it shall become effective, not on the policy date, but on the date of delivery and payment. Part II of the original application itself bears date of May 24, when McClain's insurable age was the same as on the date of payment and delivery of the policy, and the re- ceipt given insured on the originally tendered payment of premium recited that the policy should be in force, not as of May 23, but as of the date of Part II of the application. The letter from the company's agent advis-

ing insured of the rejection of his application and making tender of a new policy nowhere suggests that the policy is being predated to make him of lower insurable age, or that it is based on his age as of May 23, or that his age is being advanced from an earlier age by any specified number of years or at all. It merely states the total amount of additional premium required of him at that later time to obtain a less favorable policy than he had applied for in May. The amended application which insured finally signed in September makes no mention of predating the policy or of the age upon which it is to be based. It merely agrees to the changes noted in his earlier application giving him a less favorable policy at a higher rate. In order to obtain the policy, plaintiff was required to show insurability as of September 6, by proof as to health and family history and that he had not been rejected by any other insurance company to that date. All these facts would evidence intention to insure for a policy term beginning September rather than May, and would militate against the interpretation of the policy as being predated by agreement with insured. On the other hand, if insured read the statement at the top of page one of the policy "Age 43 Rated" and also noted on the photostatic copy of his original application the added words "age of applicant advanced 8 years" and considered the two statements together, he would, by computation, have discovered that the policy was being based upon his age as thirty-five rather than thirty-six. The court below having found in favor of insured, we cannot conclude that this possibility of inference of predating, discoverable only by such computation, so outweighs all evidence to the contrary as to make the court's finding void of support. The fact that the premium rate may have violated our statute against discrimination in rates is no defense to the suit on the policy here.

■ Finally, it is urged that the court below erred in excluding evidence and offer of proof that, "At the time

of soliciting this insurance and making and signing the application, the insured named therein, after having had explained to him the various premium rates on his birth date, as it was shown on the application, requested that the policy be dated on the basis of his insurable age, being thirty-five years." We think such offer was properly rejected. Even on May 24, which was the effective date of his original application for a policy, his insurable age would have been thirty-six years. Further, the offer of proof violates a specific provision of the policy, that "This policy and the application therefor constitute the entire contract between the parties * * * and no statement shall avoid the policy or be used in defense to a claim under it unless contained in the written application and a copy of the same attached hereto." Still further, this offer, as to a purported conversation with the agent at the time of the soliciting of the application in May, would not affect the new agreement in September, where the premium rate was neither that for age thirty-five nor that for age thirty-six, but a rate arbitrarily set by the company.

Our attention has not been called to any decision involving facts altogether like those in the case at bar. We have considered particularly the Missouri cases relied on by plaintiff in error, for the reason that the decisions there have been in harmony with our decision in the Shinall case. In *Prange v. International Life Ins. Co.*, 329 Mo. 651, 46 S.W. (2d) 523, the policy expressly stipulated that after delivery to the insured it should take effect as of a specified date prior to that of the original application and, on the date of delivery, the insured signed a supplemental application expressing his desire that the policy be dated on that earlier day. That constituted strong and positive evidence of agreement that the policy should be so predated.

In *McQueeny v. National Fidelity Life Ins. Co.*, 350 Mo. 469, 166 S.W. (2d) 461, the application provided that the policy should not take effect until payment of

the first annual premium and the application had been completed and received and approved by the company, and that the policy should bear the date of such approval, unless otherwise requested in statement 9, and under statement 9 were written the words: "Date policy June 28, to hold age." Accordingly, there the agreement for predating the policy was plainly established by the written contract.

In *Tabler v. General Am. Life Ins. Co.*, 342 Mo. 726, 117 S.W. (2d) 278, the policy was dated the second day of March, which was the last day for insurance at the age of twenty-seven, and payment and delivery made at a later date. There, however, the application provided that the insurance policy as issued should not take effect until the first premium was paid and the policy delivered, "but in that event the policy shall bear the date of its issuance and all future premiums shall become due on such policy date * * *." Insured's age was plainly stated in the policy as twenty-seven; the policy specifically provided that the first premium was term insurance for the first year ending on the second day of March; further, the insured prior to his death paid four annual premiums based on the policy date and had made application for reinstatement after default, stating that the premium was due on the policy date. Thereby the agreement to predate the policy was manifest.

In *Meadows v. Continental Assurance Co.*, 89 F. (2d) 256, the policy was dated July 9, 1926, and accepted August 9, 1926. It specifically provided that, "After the delivery of this policy to the insured and the payment of the first premium it shall take effect as of the 9th day of July, 1926," and in that case also the policy provided that the first year's insurance under the policy was term insurance, and still further in that case, the insured had paid premiums on the policy for six years without default according to the policy date.

In each of these cases there is convincing evi-

dence in the plainly stated provisions of the application and policy establishing agreement of the parties for predating the policy in order to gain advantage of a lower premium rate. Such lower rate is sufficient consideration to support such an agreement. The distinction between those cases and the instant case is that here the application and policy contain no such clear evidence of consideration and intention to predate the policy. In those cases the evidence was clear; in this case it is uncertain and ambiguous, and should be interpreted favorably to the insured.

We find no essential distinction between this case and the Shinall case and, accordingly, the judgment of the court below is affirmed.

MR. CHIEF JUSTICE KNOUS, MR. JUSTICE JACKSON and MR. JUSTICE ALTER dissent.

MR. JUSTICE JACKSON dissenting.

We who dissent from the court opinion do so because we do not believe this case is controlled by *Shinall v. Prudential Insurance Co.,* 91 Colo. 194, 14 P. (2d) 183. An examination of the opinion in that case shows that the two principal cases cited in support thereof are *Prudential Ins. Co. v. Stewart,* 237 Fed. 70, and *Halsey v. American Central Life Ins. Co.,* 258 Mo. 659, 167 S.W. 951. These two cases and the Shinall case are alike in the following salient features: (1) There was a variance between the effective date of the policy as expressed in the application and the date of the policy itself; (2) the policy in all other respects was written in the form for which application was made; (3) no change of age of the insured had occurred between the date of the policy and the date when the policy became effective.

In the instant case there is no similarity in respect to the second feature. The policy was not written in accordance with the application, but a new policy, eliminating some of the provisions required by the applica-

tion and substituting others, including a different rating and premium, was written. In the words of the majority opinion: "The original application was rejected. The sending of the policy to McClain on June 11 was only a counteroffer which was not then accepted." Counsel for both sides and all members of our Court apparently agree that this counteroffer was accepted on September 6th.

There is no similarity between this and the Shinall case in respect to the third feature. In the present case a change of age for insurance purposes had occurred between the date of the policy and the time when it became effective. Not so in the Shinall case.

Are these differences so basic as to call for a different resolution of the principles involved, or are they so inconsequential that they can be ignored or overlooked as the majority opinion implies?

An examination of the cases arising in the two jurisdictions chiefly supporting the opinion in Shinall suggests that the differences above mentioned are basic and not to be ignored.

A study discloses that in Missouri there appears to be a line of cases that follow the Halsey case and another line that does not. In *Penn Mutual Life Ins. Co. v. Forcier*, 103 F. (2d) 166, reference is made to this divergence in the following words:

"In construing such policies and in determining their effective premium date the Missouri courts have emphasized two controlling factors: first, the character of the contract, that is whether it provides for ordinary life, term or endowment insurance; and, second, the relative date of the insured's change of age for the purpose of determining the amount of the premium.

"The application of these distinctions has resulted in two separate and distinct lines of decision by the Missouri courts. The appellant relies upon one of these lines of decision and the appellees upon the other.

"The leading case is the decision of the Supreme Court of Missouri in *Halsey v. American Central Life Ins. Co.,* 1914, 258 Mo. 659, 167 S.W. 951, 952. * * *

"The cases in which the same or all of the above quoted policy provisions occur and which have been distinguished from the Halsey case hold that the effective premium date is the date of the policy and not the date of its delivery and of the payment of the first premium. In these cases the features of the contract on which they are distinguished from the rule in the Halsey case are: first, where the policy provides for term insurance instead of ordinary life and the parties agree that the premium paid will carry the insurance only to a definite future date; and, second, when the policy is predated for the purpose of giving the insured a lower rate on account of change in his age. Both these conditions were present in the leading case of *Prange v. International Life Ins. Co.,* 1931, 329 Mo. 651, 46 S.W. 2d 523, 80 A.L.R. 950; and one or both of them have been recognized as controlling in many cases since. *National City Bank v. Missouri State Life Ins. Co., supra; Medlin v. American Bankers' Ins. Co.,* 227 Mo. App. 705, 59 S.W. 2d 738; *Petersen v. Metropolitan Life Ins. Co.,* Mo. App. 84 S.W. 2d 157; *Vail v. Midland Life Ins. Co.,* Mo. App., 108 S.W. 2d 147; *Lacy v. American Central Life Ins. Co.,* Mo. App. 115 S.W. 2d 193; *Tabler v. General American Life Ins. Co., supra,* and others. Another situation suggested in the *Tabler* case, *supra,* which may be distinguished from the facts in the *Halsey case,* occurs where the policy provides for endowment insurance. In this situation the court indicated that when the interest value of the earlier endowment maturity more than compensated for the loss of the proportional part of the premium money due to reducing the length of the first premium period, the policy would be construed to give the insured the advantage of the earliest settlement at the end of the endowment period."

In the federal jurisdiction we likewise find a line of

authorities that do not follow, or are distinguishable from, the Stewart case, from one of which, *New York Life Ins. Co. v. Silverstein,* 53 F. (2d) 986, we quote as follows:

"But there is a further reason why this instruction was erroneous. The court in effect told the jury that if they found the premium was not paid until July 11, 1927, the payment of the premium on that date would carry the policy forward for six months, and the payment of the premium for another six months would carry the policy through a further six months' period, and so on. However, the policy contains the following definite provision: 'This contract is made in consideration of the payment in advance of the sum of $94.35, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this policy for the period termination on the 28th day of September, 1927, and of a like sum on said date and every six calendar months thereafter during the life of the insured.'

"As has already been noted, the policy further provides on its face that: 'This policy takes effect as of the 28th day of March, 1927, which day is the anniversary of the policy.'

"There is no real inconsistency between these above-quoted provisions in the policy and the provision in the application to the effect that the policy should not take effect until its delivery and the payment of the first premium. The policy definitely provides that the premiums following the first shall be due on definite dates, or at the expiration of definite periods. These contract provisions must control. *McCampbell v. New York Life Ins. Co.* (C.C.A.) 288 F. 465; *McConnell v. Provident Savings Life Assur. Society* (C.C.A.) 92 F. 769; *Sellers v. Continental Life Ins. Co.* (C.C.A.) 30 F. (2d) 42.

"Even had the policy not become effective until July 11, 1927, still the subsequent premiums became due on the dates provided in the policy, and if the premium due September 28, 1928 was not paid on that date, or

within the thirty days' grace period allowed, the policy by its terms lapsed. This position is further enforced by the fact that the insured obtained the benefit of a lower rate for the insurance by reason of its having taken effect at the earlier date, to wit, March 28, 1927, rather than at some later date, depending on payment of the first premium. *Johnson v. Mutual Benefit Life Ins. Co.* (C.C.A.) 143 F. 950; *McCampbell v. New York Life Ins. Co.* (C.C.A.) 288 F. 465."

This case was subsequently followed in *New York Life Ins. Co. v. Tolbert*, 55 F. (2d) 10. The last named case arose in the Federal District Court for Colorado and has likewise been followed by some of the above mentioned authorities.

The majority opinion seeks to distinguish or minimize *Tabler v. General American Life Ins. Co.*, 342 Mo. 726, 117 S.W. (2d) 278, and *Meadows v. Continental Assur. Co.* (Mo.), 89 F. (2d) 256. In *Tabler v. Insurance Co., supra*, as in the instant case, the policy issued was a term policy, was predated, and was not issued in accordance with the terms of the original application; therefore, it involved the rejection of the insured's application and the presentation of a new policy to the insured as a counteroffer. That appears to be the basis of the Tabler decision, as the author of the court's opinion states: "Since this policy was not described in or contemplated by his application, Tabler must have decided to accept it on the basis of its terms instead of the terms of the application." The Missouri court seems to have regarded this as the crux of the matter, as we of the minority do in the instant case, because, in a subsequent opinion, *Howard v. Aetna Life Ins. Co.*, 350 Mo. 17, 164 S.W. (2d) 360, 364, it said: "The policy involved in the Tabler case, supra, was issued without any application being made, and it was held that the insured 'must have decided to accept it on the basis of its terms.'"

In fact, the author of the opinion in the Tabler case, distinguishing it from the Halsey authority, uses lan-

guage which exactly presents the distinction that we believe should be made between the Shinall opinion and that in the instant case as follows: "The principal basis of the Halsey case seems to be that unless the insurance continued for a full year after the delivery of the policy, then the insured did not get anything for part of his premium money. That could not be true here because, by cutting down the first term paid for, Tabler did get something for that proportional part of his premium money. He got both a lower rate, throughout the whole life of his policy, and an earlier endowment maturity. * * * *There was no change of age in the Halsey case between the date of the application or policy and the date delivery and payment* * * *." (Italics ours). *Tabler v. General Amer. Life Ins. Co.*, 342 Mo. 726, 117 S.W. (2d) 278.

Likewise the court in its opinion here seeks to dismiss the Meadows case, supra, as not in point. In that case application was made for one policy and four policies were issued, but they were not dated as requested in the application. The pertinency of the case appears from the following paragraph of the opinion: "It is clear that the minds of the parties never met in a binding contract until August 9th. Meadows was not bound to accept even one policy, because, as first issued, of the increased premium, as last issued because of the backdating. The contract was made by accepting the policies, and is expressed in them. * * * The agreed dating of the policies as of July 9th made them cover a month during which there was really no insurance, but it secured to the insured not only the lower premium rate but resulted also in accelerating all the benefits under the policies which depended on the lapse of time. The company would be estopped with reference to them to question its agreement that the policies took effect as of July 9, 1926. The premium rate not being fixed by law, and the parties being free to contract as they chose on the matters affected, they are bound by the contracts they made.

*McCampbell v. New York Life Ins. Co.* (C.C.A.) 288 F. 465."

We believe these same words could and should be used in the disposition of the instant case. An examination of the cases decided subsequently to the Halsey case would indicate that the Missouri appellate courts have applied the rule announced in that case and allowed recovery whenever the policy was issued in accordance with terms of the application, with the one exception, i.e., where there is a variance between the effective dates for which provision is made in the application and in the policy. *Scotten v. Metropolitan Life Ins. Co.* (Mo.), 68 S.W. (2d) 60, 62; *Kennedy v. National Accident & Health Ins. Co.* (Mo.), 76 S.W. (2d) 748; *Wilson v. Kansas City Life Ins. Co.*, 233 Mo. App. 1006, 128 S.W. (2d) 319, 325. On the contrary, recovery has been denied whenever a new policy has been written, variant from that for which application was made, and subsequently accepted by the insured, and where a change of age has occurred between the date of the policy and the date of its acceptance. A few additional cases somewhat similar to that of *Tabler v. Insurance Co., supra,* and distinguished from the Halsey case are: *Equitable Life Assur. Soc. of U. S. v. Tucker*, 128 F. (2d) 396; *Hussey v. Ohio Nat. Life Ins. Co.* (Mo.), 119 S.W. (2d) 455, 457; *McDonnel v. Hawkeye Life Ins. Co.* (Mo.), 64 S.W. (2d) 748, 750; *DeWalt v. State Farm Mut. Auto. Ins. Co. of Bloomington, Ill.,* 111 F. (2d) 699, 702, C.C.A. 8th Cir.; *McQueeny v. Nat. Fidelity Life Ins. Co.*, 350 Mo. 469, 166 S.W. (2d) 461, 470; *LeGrand v. Central States Life Ins. Co. of St. Louis,* 235 Mo. App. 323, 132 S.W. (2d) 1105, 1108.

A like distinction seems to exist in the federal cases; so it appears logical to assume that if the present case had arisen in Missouri the courts of that state would have distinguished it from *Halsey v. Insurance Co., supra,* and would have followed the Tabler case; if it had arisen in the federal courts they would have fol-

lowed *Meadows v. Continental Co., supra,* and it would not have been classified with the Stewart case. Some of the federal cases which, like the Meadows case, are distinguished from the Stewart case are: *Rosenthal v. New York Life Ins. Co.,* 94 F. (2d) 675, 680; *Kansas City Life Ins. Co. v. Lipsey,* 123 F. (2d) 998; and *Henning v. Jefferson Standard Life Ins. Co.,* 129 F. (2d) 225, 226.

When our court in *Shinall v. Prudential Ins. Co., supra,* adopted the law as laid down in the Stewart and Halsey cases, it followed the minority rule applicable to the interpretation of insurance policies. It now would seem to ignore the jurisdictions upon which it relied in the Shinall case and takes a position that has no support even from those jurisdictions which favor the minority rule. It becomes a minority in a minority. It would appear to stand alone.

The next question is, whether the statutes of Colorado justify the distinction that has been drawn in those jurisdictions. We say with confidence that the intendment of our statutes is in favor of the distinction which we urge in this case. Section 57, chapter 87, '35 C.S.A., contains, inter alia, the following: "It shall be unlawful for any foreign or domestic life insurance company to issue or deliver in this state any life insurance policy unless the same shall contain the following provisions: * * * 2. A provision that the policy shall constitute the entire contract between the parties and shall be incontestable after it shall have been in force during the lifetime of the insured for two years from its date."

Section 58, chapter 87, '35 C.S.A., forbids the issuance and delivery of any "life insurance policy if it contains any of the following provisions * * * 3. A provision by which the policy shall purport to be issued or to take effect more than one year before the original application for the insurance was made, if thereby the assured would rate at an age not more than one year younger than his age at date when application was made, according to his age at nearest birthday."

Here we have two provisions of our statutes—the one being in harmony with a decision holding that the terms of the policy should be controlling, the second recognizing the practice of predating life insurance policies and regulating that practice. The spirit of both provisions argues for a reversal of the judgment in this case.

The author of the majority opinion, and counsel for insured's beneficiary in their brief, have endeavored to inject an ambiguity into this case that does not exist. They do this by reason of the fact that while Part I of the application was dated May 23, 1940, Part II (the medical portion) was dated May 24, 1940. They then point out that the official receipt of the company specified that the insurance was to be in force from the date of the completion of Part II of the application, and as between that date, May 24, 1940, and the date of acceptance of the policy, September 6, it is argued that no change of age of the insured had occurred. The weakness of this argument is that both the court, in its majority opinion, and counsel for the beneficiary completely ignore the last clause of the official receipt which we have italicized, the receipt being as follows: "Received from Edward G. McClain of Alamosa, $24.40 on account of the first annual premium on a proposed insurance of $2000 on the 10-yr. term plan, as this day applied for, such insurance to be in force from the date of the completion of Part II of this examination, *provided, that the Company at its Home Office in Boston shall be satisfied that on said date the applicant was insurable in accordance with its rules at standard rates and shall approve for the amount and on the plan applied for without modification.*" If reliance is placed on this receipt, then May 24th is not a controlling date for the policy because it is disclosed by the record that the company never accepted the applicant as "insurable in accordance with its rules at standard rates," and did not "approve for the amount and on the plan applied for without modification."

At this point it is appropriate to note that the trial judge's preliminary finding in favor of defendant in error was based solely upon the ground that the policy was predated. He said: "I think that this insurance contract did not become effective until that amendment to the application was made, September 6, and I think that is when the insurance became effective. So the findings will be for the plaintiff." These words do not countenance any predated policy, although, as we have seen, it is expressly recognized by statute in this state and elsewhere generally. It also will be noted that no mention was made of any ambiguity at that time; but when the final decree was prepared by counsel, the reason given by the court in his preliminary finding was eliminated and there is a finding of ambiguity substituted, based on the theory that the date, May 23, 1940, was a mere incident and not controlling. This in face of the fact that it is the only date in the policy, that it appears on the first page in bold type and *five* times on subsequent pages. It also is recited, on the first page, in bold type that premiums shall be paid annually every May 23 during the life of the policy. *May 23, 1940, is the only date appearing in all three documents pertaining to this insurance,* i.e. (1) The policy itself; (2) the original application; and (3) the subsequent amendment to the application.

The trial court excluded evidence offered to show that both insured and insurer had agreed that the policy should be antedated so as to hold the insured's age to thirty-five years, and then, having excluded all evidence of intention, it signed a decree which included a finding that it was the agreement of the parties that the policy of insurance was not to be antedated and that insured did not request that it be antedated. If, as the trial court held, there was ambiguity, then parole evidence to explain it should have been admitted. Not being admitted, it was manifest error to make an affirmative finding that it was the intention of the parties that the policy

was not to be antedated and that the insured did not request that it be antedated.

Judge Sanborn once said, a rule of construction "ought not to be permitted to have the effect to make a plain agreement ambiguous, and then to interpret it in favor of the insured." *Standard Life & Acc. Ins. Co. v. McNulty* (C.C.A.), 157 Fed. 224, 226. The facts in the present case that can not be obliterated and which show no ambiguity are: (1) The policy was different from that contemplated in the original application. It was subsequently accepted by the insured as a counteroffer "on the basis of its own terms." "The contract was made by accepting the [policy] and is expressed in [it]." (2) It was a term policy to run for a definite period. The policy in the Shinall case was a life policy. (3) It was predated, and as a result, a change of age occurred between its date, May 23, and the date of its acceptance, September 6th. In the Shinall case there was no predating and no change of age occurred between the date of the application and the date of the delivery of the policy. The author of the opinion in the Shinall case makes this very distinction when, in stating the various contingencies where it is not applicable, he includes the case "where there was a special consideration for antedating the policy." He also distinguished the case of *McKenney v. Phoenix Mutual Life Ins. Co.*, 138 Wash. 315, 244 Pac. 560, when he referred to the fact that the policy in that case was antedated for insured's benefit to reduce his insurable age, as being a material difference from the Shinall case.

There appears to have been no overreaching in this case in the sense that a party of superior intelligence has imposed upon one of inferior intellect. The evidence showed that the insured knew the common meaning of words, that he and his wife were in a commercial business that involved constant use of the written as well as the spoken word, and that they were of a higher degree of intelligence than the average of their fellow men.

Insured was at the time carrying other insurance. There was no situation in which a quick decision was forced upon him. He had three months to study the document which he finally accepted. At the time of acceptance he signed an acknowledgment consenting to the modifications made in the policy. The undisputed evidence also disclosed that the insurance company had, prior to May 23, 1941, mailed the regular notice of premium due, and that a second notice, warning that the policy would lapse if payment was not made within the thirty-one day grace period, also had been mailed to insured. There was no evidence that insured had ever questioned the due date of the 1941 premium.

This case is not the Shinall case.

Under the principles of both law and equity, the judgment in this case should be reversed.

MR. CHIEF JUSTICE KNOUS and MR. JUSTICE ALTER concur in this dissent.