No. 16,036.

AMERICAN NATIONAL INSURANCE COMPANY *v.* GREGG.
(231 P. [2d] 467)

Decided April 30, 1951.

Messrs. BURRIS & BUMGARDNER, for plaintiff in error.

Mr. CHARLES F. KEEN, Mr. WILLIAM L. LLOYD, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

ACTION on a life insurance policy. Plaintiff in error, defendant below, was the insurer, William Timothy Gregg was the insured, and defendant in error, plaintiff below, was the beneficiary. It appears that June 27, 1946, the insured, solicited thereto by defendant's agent, made written application for the policy involved; that August 9, 1946, defendant issued the policy; that September 10, 1946, there was delivery thereof, and March 30, 1947, the insured departed this life. The over-all question is, What was the effective date of the policy? Plaintiff maintains that the date of delivery of the policy is the answer, while defendant asserts that the date of issuance thereof is controlling. That major importance attends the question is due to a thirty-one days of grace period provision of the policy, which, applied here, means that if the date of the delivery of the policy controls, the second semiannual premium payment came due March 10, 1947, which the grace period would extend to April 10, 1947, or beyond the date of the death of the insured; but if the date of the policy controls, the like premium came due February 9, 1947, which the grace period would extend only to March 10, 1947, or some twenty days prior to the death of the insured.

At the close of the case, the court, proceeding well advised, as we are persuaded, and as moved thereto, disposed of the case as follows, that is to say: "After all of the testimony was in and both parties to the action rested," said the court, "the defendant moved for a nonsuit and joined with its motion for a nonsuit a motion for a directed verdict, and both motions were overruled. Then the plaintiff moved for a directed verdict, * * * [which was] argued but not passed upon by the court. Then the defendant filed its supplementary motion for a directed verdict and that motion was argued and taken under advisement until this morning, so at the present time there is plaintiff's motion for a directed verdict, and defendant's supplementary motion for a directed verdict before the Court. Under the code, of

course, motions for directed verdicts by both parties automatically took a case from the jury and made it a matter of law for the Court. I am not so sure about that under the new rules. The issue, as the Court sees it, is just this: whether or not the defendant company is liable on the life insurance policy No. 1066707, issued on the life of William Timothy Gregg, now deceased. At the beginning it was conceded by both parties that if the policy was in force at the time of the deceased's death on March 30, 1947, then the Company was liable, * * * [but] if the policy had lapsed for nonpayment of premiums, or that it was not in force, then the Company was not liable. The application for the policy was written on July 16 [June 27], as I recall it, of 1946; the policy was dated and issued on August 9, 1946, and delivery of the policy was made to the deceased on September 10, 1946, at which time the semiannual premium thereof was paid. The application was made a part of the contract and the application provides that the company is not liable under that policy until the issue of it and the actual delivery of the same, and the premium, that is, the annual premium or a regular installment thereof had been settled and accepted by the Company. On the face of it the policy provides that same was issued in consideration of the application and is conditioned upon the payment of the first annual premium of [or] the first installment thereof. The policy also grants thirty-one days grace period for the payment of premiums after the first premium was paid, and that during the grace period the insurance under the policy is continued in force. Now those are the facts of the policy as the Court recalls it. The question now is whether the semiannual premium dated from the date and issue of the policy on August 9, 1946, or from the date of delivery of the policy and the payment of the premium on September 10, 1946. After a review of all of the several arguments in the case, the Court finds nothing to show that the parties ever stipulated or made any attempt to

stipulate or to agree that the premium should attach and begin to run prior to the date of the delivery of the policy, but the policy itself provides that no liability thereon shall attach until the delivery of the policy and the payment of the premium. On September 10, 1946 the insured paid for six months insurance, or paid the semiannual premium and is entitled to six months pro- tection, and this period expired on March 10, 1947, and under the terms of the policy he had thirty-one days grace period, during which time the policy was in force. Under the authority of Shinall v. Prudential Insurance Company, 91 Colo. 194 [14 P. (2d) 183], and the Columbian National Life Insurance Company case, 115 Colorado, 458, [174 P. (2d) 348], the Court finds nothing it can do except to find that the policy at the time of the death of the deceased was in force and that the Company is liable for the face amount thereof, and plaintiff's motion for a directed verdict in the sum of $10,000.00 and interest is sustained." The jury, proceeding in accordance with the court's direction, returned a verdict in favor of plaintiff, in form and sum as indicated, and consistent therewith judgment was given.

■ Giving attention to plaintiff in error's challenge of the applicability of the Shinall and McClain cases, on which the trial court based its ruling, we have been at pains to re-examine those opinions in the light thereof. Our considered conclusion is that the trial court sensed the philosophy thereof, and correctly resolved that the inquiry here is not of distinguishing factors. In the application which the insured signed, and which was made part of the policy, the company stressed the fact that *delivery* of the policy was essential to its validity. The circumstances considered, and in all reason, as we think, and in the absence of specific agreement otherwise, not claimed here, the delivery date of the policy here should control, and that is the sum of our holding in those cases. It would not be profitable to review the cited cases at

length, but so far as the profession may be interested in the point, we commend the reading of the opinions.

While this case involves only the policy issued to Mr. Gregg, the company in its answer refers to the Mrs. Gregg and Carter policies, and says that "all * * * enter into the transactions which go to make up the facts pertinent to this case." It is not claimed that conspiracy in any degree or for any purpose attended the fact that the three applied for, and received, policies from plaintiff in error. The company's agent, not the several insured, initiated the movement out of which the applications were signed. No misrepresentation by any of the applicants was alleged, shown or even hinted. Separate applications were made, as already appears, and that any of the applicants was a bad risk is not claimed. In the interest of information we undertake to relate the story in which John Q. Adams, Gregg, Leola M. Gregg, his wife, and Victor R. Carter, were characters, and the parts severally played by them.

At all times important here, and for several years prior thereto, Adams, an experienced life insurance agent, was the representative of plaintiff in error at Pueblo. The Greggs and Carter were the officers and in control of the Gregg Aircraft Manufacturing Company, a corporation, operating in Pueblo. June 27, 1946, Adams solicited them to take life policies from the company of his representation, to which they severally acceded. In evidence thereof the solicitees, acting individually, and not in concert, signed applications for insurance, Gregg for ten thousand dollars, Carter for a like sum, and Mrs. Gregg for five thousand dollars. Gregg and Carter named their respective wives as beneficiaries, and Mrs. Gregg, her husband. Gregg's policy, as already has been stated, was delivered September 10, 1946, Carter's September 17, 1946, and Mrs. Gregg's October 16, 1946. In connection therewith, as defendant pleaded in its answer, and as Adams testified, "said agent personally advanced the sum of $251.50, being the amount of the

first semiannual premium on the insurance in question [Gregg's], * * * [and] the full annual premium on the policy issued to Virgil R. Carter and four quarterly premiums on the policy issued to Leola M. Gregg." In the respective sums thus paid to the company by Adams, the several insured executed notes payable to him, not the company. October 24, 1946, Gregg "reimbursed said agent on that account in the sum of $125.75," as further alleged by the company and established, and which was credited on his note. Neither Carter nor Mrs. Gregg paid anything on their notes. As to those two notes, however, Adams concluded to take, and was issued, certificates for a certain number of shares of stock in the Gregg Aircraft Company, at an agreed price, to cover the "annual premium on Mrs. Gregg's and Mr. Carter's policies," and their notes were "marked paid and delivered back to them." December 12, 1946, and as the result of computations evidently agreed upon by Adams, the Greggs and Carter, it appeared that there was due to Adams from the three insured persons, in varying amounts, the aggregate sum of $262.55, Gregg's portion thereof being the balance of $125.75 due on his note mentioned above. In evidence of the agreed total indebtedness, a joint note in the sum mentioned, payable to Adams personally, was executed by the Greggs and Carter. Upon the delivery of that note Gregg's earlier individual note was marked paid and surrendered to him. The joint note was not paid when due, and soon thereafter Gregg lost his life in a plane accident. At the time of trial Adams had the joint note.

▮ It is without legal significance, we think, that Adams accepted the stock and notes as indicated. It is not claimed, nor does it appear otherwise, that the stock and notes mentioned were taken for or in the interest or behalf of the company. On the contrary, as the company pleaded, and Adams testified, the latter paid the premium on the policy involved here, which payment, as is conceded, made it "paid up" to February 9, 1947, plus

the grace period of thirty-one days, or until March 10, 1947; and, on the theory of our conclusion, already stated, that the effective date of the policy was September 10, 1946, when there was delivery, the grace period carried it to April 10, 1947, or well beyond the date of the passing of the insured. *"An insurance agent* may pay premiums * * * as a volunteer, and the fact that the amount advanced by the agent is not repaid to him does not invalidate the policy." 44 C.J.S., p. 1320, §347. "If the premium is actually paid by the agent of the company for the insured under an agreement between them and such payment is accepted by the company," all as here, "this will be sufficient to bind the company." 25 Cyc., 725. "If the company actually received the premium, it was a matter of no sort of consequence who paid it." *Home Ins. Co. v. Curtis,* 32 Mich. 402. "While it is true, as a general proposition, that an agent may not accept property in lieu of cash for the premium without express authority to do so, it is equally as true that, when he actually pays the premium in cash to the insurer, it ends the matter, so far as the insurer is concerned." *Herring v. American Ins. Co.,* 123 Iowa 533, 99 N.W. 130.

 The company specifies error on two rulings made at a pretrial conference. The first one pertained to paragraph four of plaintiff's complaint, in which she alleged, "That at the time of the said death of the said William Timothy Gregg all premiums due and payable on said policy had been paid by one J. Q. Adams, agent of defendant." Counsel for the company inquired, "how plaintiff intended to prove the allegations contained in paragraph 4 and by whom." The answer was that, "plaintiff expected to prove the allegations in paragraph 4 by plaintiff, Virgil R. Carter and John Q. Adams, agent, and by the allegations made in defendant's answer and defendant's motion for summary judgment." Counsel for the company insisted that plaintiff state the "specific allegations in defendant's answer and motion for

summary judgment that they were relying upon." The court ruled that since plaintiff had given the names of the three witnesses on whose testimony she would rely, plus "defendant's own answer and motion for summary judgment which were prepared and filed by the defendant as part of the record," she had sufficiently answered. We cannot think the court erred, and assuredly defendant could not have been misled by the ruling. Plaintiff, as already stated, had alleged that the requisite payment had been made by, "John Q. Adams, agent of defendant," and by its answer and motion, defendant had set forth that its "local agent, John Q. Adams, personally advanced the sum of two hundred fifty-one and 50/100 dollars in payment of the first semiannual premium which was received and credited by defendant." Considering the state of the pleadings, as we think, no mystery attended in the premises. The evidence given by the witnesses mentioned, and particularly that of the agent Adams, made certain that which already was clear.

The second complaint in the same regard is that, the court erred "in not requiring defendant [plaintiff] to state whether or not they intended to prove that the agent had authority to accept a promissory note and stock in the Gregg Aircraft Manufacturing Company." The record considered, and re-emphasizing what already we have said, the question is not pertinent. It neither was pleaded nor otherwise claimed that in behalf of the company its agent Adams sought or accepted promissory notes or shares of stock, or that either the insured or the agent intended that the company should take or accept notes or shares of stock in payment of the premium, nor did it.

The company's other specifications have had our attention, but we believe them to be without merit. Let the judgment be affirmed.

MR. JUSTICE HAYS and MR. JUSTICE MOORE concur, MR. JUSTICE ALTER concurs specially, and MR. CHIEF JUSTICE

JACKSON, MR. JUSTICE STONE and MR. JUSTICE HOLLAND dissent.

MR. JUSTICE ALTER specially concurring.

Here the opinion is supported by those announced in *Shinall v. Prudential Ins. Co.,* 91 Colo. 194, 14 P. (2d) 183; *Hill v. Capitol Life Ins. Co.,* 91 Colo. 300, 14 P. (2d) 1006, both announced in 1932, and in *Columbian National Life Ins. Co. v. McClain,* 115 Colo. 458, 174 P. (2d) 348. I dissented from the opinion in each of those cases, believing then and now, that they do violence to the law of contracts. My convictions have not undergone any change, but since I now feel bound by the law as determined in the cases, supra, the rule of stare decisis compels my concurrence.