LETTS, Judge.
The main issue which we address is whether a life insurance policy remains in full force and effect even though the agent, rather than the insured, pays the first year’s premium in cash. We conclude the policy is enforceable and, therefore, the beneficiary is entitled to the proceeds.
The insurance company asserts that Section 627.4035, Florida Statutes (1981), requires that the payment be made by someone other than the agent, but we find no such exclusion in the statute. The only relevant provision is that the payment must be made in cash. It was.
The insurance company also cites Sections 626.561, 626.611, 626.753, 626.794, 626.9541,[1] 627.403, 627.453, 627.460, and 627.474, Florida Statutes (1981), for the propositions that the insured must pay the premium, or the agent cannot. However, a *1258 close reading of these convoluted provisions does not lead us to that conclusion. It is quite clear that an agent may not, on behalf of the insurance company, accept personal services or property in lieu of cash and thereby bind the company. Hoffman v. John Hancock Mutual Life Ins. Co., 2 Otto 161, 92 U.S. 161, 23 L.Ed. 539 (1875). Nevertheless, if an agent accepts services in lieu of the cash, but pays the requisite cash premium to the company as an advance or credit to the insured, the insurance company is bound. As stated in Markel v. Travelers Insurance Co., 510 F.2d 1202, 1206 (10th Cir.1975), “[t]he general rule would appear to be that when an insurance agent pays the insurance company the premium due on a policy, and such payment is accepted by the insurance company, the latter will be bound.” See also Meyers v. State Farm Life Insurance Co., 416 S.W.2d 10 (Mo.App.1967). American National Insurance Co. v. Gregg, 123 Colo. 476, 231 P.2d 467, 470 (1951), held that an insurance policy was valid even though the agent had paid the premium and had taken stock in lieu of cash, and found that it was “without legal significance ... that Adams accepted the stock and notes ... [since] the stock and notes mentioned were [not] taken for or in the interest or behalf of the company.”
What appears to be the general rule was summed up in Gibson v. Texas Prudential Insurance Company, 229 Mo.App. 867, 86 S.W.2d 400, 407 (1935), when it stated:
The rule seems to be universal that an agent, with power to collect money owing to his principal, cannot bind the principal by accepting merchandise or other personal property in lieu of money. The only exception which we think will be found to this universal rule is that if the agent accepts merchandise in lieu of money and then pays the money to his principal, the principal is in no position to complain.
Moreover, the insurer should not be heard to argue that the insured’s failure to actually repay the agent defeats the widow’s right to recover. Jefferson Standard Life Ins. Co. v. Lyons, 122 Fla. 346, 165 So. 351 (1936); American National Ins. Co. v. Gregg, supra; Gibson v. Texas Prudential Ins. Co., supra; Franklin Life Ins. Co. v. Staats, 94 F.2d 481 (5th Cir.1937), cert. denied, 304 U.S. 560, 58 S.Ct. 942, 82 L.Ed. 1527 (1938); New York Life Ins. Co. v. McCreary, 60 F.2d 355 (8th Cir.1932); and 14 Appleman Ins. Law & Practice §§ 8011-8012 (1944).
The insurance company also complains that the quid pro quo for the agent paying the premium was a totally improper offer of free room and board at the insured’s motel. We are unimpressed by this argument and would reiterate that the insurance company got all it was entitled to in cash for the first year’s premium. If the agent’s behavior was improper, that impropriety may give rise to a cause of action against that agent by the insurer, but it does not vitiate the policy.[2] We affirm on this point.
We next consider the insurance company’s claim that the trial court erred in not deducting the second year’s premium from the award. We agree this was error and reverse on this point. The second annual premium was due in its entirety on October 1, 1978. The deceased died on October 4 during the grace period but before payment. In such circumstance it appears clear that Section 627.453, Florida Statutes (1981), permits deduction of the premium. The insured’s widow argues that at best only a pro rata portion of the premium is owed; that is, for the period between October 1 and October 4, 1978. We disagree. See Long v. Pilot Life Ins. Co., 250 N.C. 590, 108 S.E.2d 840 (1959); Callahan v. John Hancock Mutual Ins. Co., 331 Mass. 552, 120 N.E.2d 640 (1954); Meridian Life Ins. Co. v. Milan, 188 S.W. 879 (Ky.1916); Annot. 45 A.L.R.2d 1264 *1259 (1956). This was a one sum annual premium due October 2 and under the statute quoted, the annual premium due may be deducted. The widow cites State Farm Life Insurance Co. v. de la Rosa, 388 So.2d 1057 (Fla. 4th DCA 1980), as support for her position, but we decline to so construe it.
The last issue we address concerns the supposed award of a “reasonable” attorney’s fee to the widow under Section 627.428, Florida Statutes (1981). In fact, the fee awarded was of the standard 40% contingency variety contracted for between the widow and her counsel. The trial judge, in his order awarding $381,074 referred not once, but five times to a contingent award and on three more occasions to that being exactly 40%. It is inescapable that he predicated the award on a contingency basis and that was error. See Florida Medical Center, Inc. v. von Stetina, 436 So.2d 1022 (Fla. 4th DCA 1983), and Kaufman & Broad Home Systems, Inc. v. Sebring Airport Authority, 366 So.2d 1230 (Fla. 2d DCA 1979).
We would not reverse because of a misnomer if in fact the fee was reasonable, no matter its label. However, we do not find that it was. In the trial judge’s order, he buttressed the reasonableness of the award because, as he wrote, there existed a “unique and unusual factual setting presenting a novel application of the law to the issues involved because of the bartering element in particular. See Republic National Life Insurance Co. v. Valdes, 348 So.2d 566 (Fla. 3d DCA 1977).” Reference to this quoted case reveals only one small paragraph on the subject which the trial judge’s order closely tracked. We cannot agree with the supposed uniqueness and time consuming complexity of the bartering aspect. There are a myriad of cases on the subject though admittedly not in Florida. Nor was this a situation where the insurance company was the recipient of the fruits of the barter (see Hoffman v. John Hancock, supra, in which the company got a horse.) Here, the company got the cash it was supposed to get and the alleged barter was between the agent and the insured. We have already discussed this aspect in detail and see nothing particularly complex about it. Moreover, notwithstanding the case law we have cited, this is a relatively simple question of statutory interpretation.
Further, this case has been here before. See National Ben Franklin Life Ins. Corp. v. Cohen, 414 So.2d 552 (Fla. 4th DCA 1982), and it is obvious from reading that prior opinion that the novel and complex issues, if any, had already been addressed for which a supposedly reasonable fee was awarded at that time.
We are also convinced that the trial judge, in reality, partly grounded the reasonableness of this fee on the fact that no lawyer could be found to represent this widow except on a contingent basis. In fact, he said so.[3] We have upheld contingent fees in cases too numerous to need citation; however, they are not automatically statutorily reasonable because lawyers insist on them. See East Coast Tire Co. v. Denmark, 381 So.2d 336 (Fla. 1st DCA 1980). In this case, a highly sophisticated and successful law firm expended 465 hours on its prosecution.[4] The amount (unlike accident cases involving pain and suffering, or complex products liability cases with multiple defendants and third party practice) was liquidated and the obtained result here an all or nothing situation. The fee awarded amounts to $819 per hour. Such an hourly rate might well be reasonable between attorney and client, assuming the client deals at arms length. However, by any statutory standards, even considering the provisions of the Code of *1260 Professional Responsibility, it just is not reasonable under the facts of this case.
Referring to the only independent expert testimony for the widow as to the reasonableness of the fee, we note that that witness, in essence, based his opinion on an exact 40% contingency even down to the number of cents. He also referred to the “sophistication and difficulty of the case [making] it classically a contingency fee case.” A further predicate was the superbness of the lawyers employed, likening the quality of their services to “Michelangelo” vis-a-vis run of the mill lawyers of the “housepainter” variety.
As we have already said, a reasonable fee by statute is not intended to be synonymous with classic contingency. Moreover, we see no reason why a reasonably competent lawyer (call him a housepainter if we must) could not have obtained the same result in this liquidated damages case. If the controversy here is complex, it is by now obvious to all that this panel has not been sophisticated enough to so perceive it.
Accordingly, we reduce the attorney’s fee award to $150,000[5] after considering all the factors present here. Our conclusion should not be taken as a signal that division of $150,000 by 465 hours results in this court’s blanket approval henceforth of $323 per hour as a reasonable fee in all cases. Each case, as the Code of Professional Responsibility supposes, must be considered on its own merits.
We find no error in the remaining points on appeal.
REVERSED IN PART AND REMANDED WITH INSTRUCTIONS TO ENTER A FINAL JUDGMENT IN ACCORDANCE HEREWITH.
HERSEY, J., concurs.
ANSTEAD, C.J., specially concurs with opinion.

. Section 626.9541 has been renumbered to Section 626.9541(l)(h), Florida Statutes (1983).

. This same reasoning would preclude cancellation by the company during the first year, never mind the confusion as to whether the rebilling for the second year was hopelessly inconsistent with the supposed cancellation.

. "I feel that at the time Mrs. Cohen solicited attorneys she probably was pretty much at the mercy of whatever the attorneys would charge her and if nobody would take it for less than the contingency fee or a forty percent fee, then that had to be reasonable to her at that time.”

. At another point in the testimony, the number of hours is given as only 430. For the purposes of this opinion, we assume the greater of these two estimates. No time sheets exist.

. This is to be credited against the client’s contract with her counsel.